# ALABAMA GREAT SOUTHERN RAILROAD CO.
## ET AL. *v.* UNITED STATES ET. AL.

NO. 45.

Argued November 8–9, 1950.—Decided January 2, 1951.

*Harold E. Spencer* argued the cause for appellants in No. 45. With him on the brief were *Robert H. Bierma, Harry E. Boe, Charles Clark, Frank H. Cole, Jr., Leo P. Day, Roland J. Lehman, David O. Mathews, John E. McCullough* and *Toll R. Ware.*

*William A. Disque* argued the cause for appellants in No. 46. *Price Daniel,* Attorney General of Texas, submitted on brief for appellant in No. 47. *Mr. Daniel* and *Mr. Disque* were on the brief for appellants in Nos. 46 and 47.

*C. R. Hillyer* argued the cause and filed a brief for appellant in No. 48.

*Philip Elman* argued the cause for the United States and the Interstate Commerce Commission, appellees. With him on the brief were *Solicitor General Perlman, Acting Assistant Attorney General Underhill, J. Roger Wollenberg, Daniel W. Knowlton* and *Edward M. Reidy.*

*Nuel D. Belnap* argued the cause for the American Barge Line Co. et al., appellees. With him on the brief were *Samuel H. Moerman, Harry C. Ames, Robert N. Burchmore* and *John S. Burchmore.*

MR. JUSTICE MINTON delivered the opinion of the Court.

In No. 45 appellant common carriers by railroad brought this suit against the United States in the District Court for the Northern District of Illinois to enjoin an order of the Interstate Commerce Commission issued June 13, 1949, in a proceeding instituted by the Commission entitled *Rail and Barge Joint Rates,* No. 26712 on the Commission's docket. Appellee Interstate Commerce Commission intervened as a party defendant before the District Court, as did appellee common carriers by water, American Barge Line Company (American), Inland Waterways Corporation, doing business as Federal Barge Lines (Federal), and Mississippi Valley Barge Line Company (Valley). A statutory three-judge court heard the case and, upon findings of fact made and conclusions of law stated, denied the injunction and dismissed the complaint. 88 F. Supp. 982. This direct appeal under 28 U. S. C. § 1253 followed.

The *Rail and Barge Joint Rates* proceeding before the Commission was instituted in 1934 as an investigation ancillary to certain formal complaints before the Commission under § 3 (e) of the Inland Waterways Corporation Act, as amended by the Denison Act, 45 Stat. 980,[1] and ancillary to other proceedings involving the same subject matter as the complaints. The investigation instituted concerned the reasonableness and lawfulness of existing through routes and joint rates, rules, regulations and practices for application by common carriers

---

[1] Repealed by Transportation Act of 1940, 54 Stat. 898, 950.

by railroad and common carriers by water operating upon the Mississippi and Warrior Rivers and their tributaries; the reasonableness of existing minimum differentials between all-rail rates and corresponding rail-barge, barge-rail and rail-barge-rail rates; the necessity, if any, for the establishment by the railroad and water carriers of additional through routes and joint rates, rules, regulations and practices; and the necessity, if any, for fixing reasonable differentials between corresponding all-rail rates and joint rail and barge rates. Consolidated for disposition with the general investigation were the complaints and other proceedings involving the same general questions.

Hearings held pursuant to this investigation over a period of eight years resulted in a record of some 16,000 pages and 1,500 exhibits. An examiner submitted a report, to which exceptions and replies were filed. After argument before the full Commission, it rendered its written report and findings dated July 7, 1948, 270 I. C. C. 591, supplemented by report dated June 13, 1949, 274 I. C. C. 229, and promulgated the order under attack. The order, made pursuant to § 307 (d) of the Transportation Act of 1940,[2] required the common carriers by rail-

---

[2] "(d) The Commission may, and it shall whenever deemed by it to be necessary or desirable in the public interest, after full hearing upon complaint or upon its own initiative without a complaint, establish through routes, joint classifications, and joint rates, fares, or charges, applicable to the transportation of passengers or property by common carriers by water, or by such carriers and carriers by railroad, or the maxima or minima, or maxima and minima, to be charged, and the divisions of such rates, fares, or charges as hereinafter provided, and the terms and conditions under which such through routes shall be operated. In the case of a through route, where one of the carriers is a common carrier by water, the Commission shall prescribe such reasonable differentials as it may find to be justified between all-rail rates and the joint rates in connection with such common carrier by water. . . ." 54 Stat. 898, 937, 49 U. S. C. § 907 (d).

road and water to establish the joint through routes for the transportation of property prescribed in the reports, and to establish and thereafter to maintain and apply over the through routes the joint rates prescribed based upon certain differentials found in the reports to be justified.

Appellant common carriers by railroad represent the railroads required by the order to enter into differential joint rail-barge rates, while appellee common carriers by water are the principal barge lines affected by the order. Appellee Federal is a corporation created by act of Congress, and is supervised by the Department of Commerce. It operates between St. Paul, Chicago, Omaha, St. Louis, New Orleans, Port Birmingham, Alabama, and intermediate ports via waterways connecting the ports. Valley operates between Pittsburgh, points on the Monongahela River, Cincinnati, St. Louis and New Orleans. American operates principally between Pittsburgh and New Orleans. Valley and American are privately owned and their operations have been financially profitable, while Federal has incurred an average net deficit from water-line operations of over $240,000 per year during the period from 1925 to 1947 inclusive.

Much evidence was introduced early in the investigation by both the railroads and the barge lines as to their costs of transportation. The cost section of the Commission made a study of relative costs for the period 1933–38 and concluded that rail-barge operating costs were greater than all-rail operating costs, due largely to the costs of added terminal handling operations. In its report the Commission stated that no useful purpose would be served by making a finding as to relative all-rail and rail-barge costs in the period covered by the study, because since that period there had been radical changes in the conditions affecting cost of transportation service by barge as well as by rail. And after reviewing other

factors bearing on costs of operation, the Commission concluded:

> "In the face of these facts we cannot find that at the present time there are demonstrable economies in barge-rail transportation on the Mississippi River and its tributaries, including the Warrior, which from the standpoint of cost of service would justify differentials." 270 I. C. C. at 606.

Appellants' primary contention is that the Commission could not prescribe reasonable differentials between all-rail rates and joint rates in connection with the water carriers without proof of lower cost of the rail-barge service. Since the Commission had no valid proof as to the relative costs of the services, appellants insist that the Commission's order is arbitrary and capricious and its conclusions that the differentials are "justified as reasonable" and "necessary and desirable in the public interest" are not supported by substantial evidence and essential findings. This, it is contended by appellants, is apparent on the face of the Commission's report, so that it is not necessary for us to examine the evidence before the Commission.

The case will perhaps be better understood by an illustration of how the order operates. Assume

Illinois Central local rate New Orleans to Cairo, Ill...... $1.00
Big Four local rate, Cairo to Cleveland, Ohio........... 1.00
Illinois Central-Big Four joint *all-rail rate*, New Orleans
   to Cleveland..................................... 1.60
The joint all-rail rate of $1.60 is divided as follows:
Illinois-Central, New Orleans to Cairo................ .80
Big Four, Cairo to Cleveland........................ .80
Assume a prescribed *differential* of........................ .20
Deduct the differential of $.20 from the $1.60 joint all-rail
   rate and the joint *barge-rail rate* is.................. 1.40
The $1.40 barge-rail rate is divided between the rail and barge
  carriers as follows:
Big Four, Cairo to Cleveland........................ .80
Barge, Cairo to New Orleans........................ .60

The local situation, New Orleans to Cairo, then, is:

On Illinois Central:

Local all-rail rate.................................... $1.00

Division of $1.60 joint all-rail rate................... .80

On the barge line:

Local port-to-port rate............................... .80

Division of $1.40 barge-rail rate..................... .60

All-rail rates are not disturbed and no question of their being compensatory is raised. The differentials fixed by the Commission are applied to the presently-existing all-rail rates to compute the prescribed joint rail-barge rate. If an all-rail rate should be modified, the differential would not automatically attach to the new all-rail rate; the joint rail-barge rate would remain as now prescribed (subject to independent modification, of course).[3] It is apparent that the barge line absorbs all the differential. A railroad carrier always gets the same amount for its leg, *e. g.*, Big Four, Cairo to Cleveland (see illustration, above), of a joint movement, whether the joint movement is all-rail or rail-barge. The railroad connecting with the barge carrier in a joint rail-barge movement is, as appellants admit, never hurt. "It is not the rail lines with which the barge lines connect which object to these unjustified differentials. It is the rail lines with which

---

[3] Counsel for the United States and the Commission have so interpreted the order. Finding 1 of the Commission reads: "We find that the amounts shown in appendix A and appendix B are justified as reasonable differentials *to be deducted from the present first-class all-rail rates . . . .*" [Emphasis supplied.] 270 I. C. C. at 619. The Commission's order, which incorporates the reports and findings by reference, requires the carriers to establish and thereafter to maintain and apply *"the joint rates prescribed in the said reports based upon the differentials found in the said reports to be justified."* [Emphasis supplied.]

This appears to require maintenance of the joint rail-barge rates prescribed, not a fixed difference between all-rail rates, no matter what they may be, and joint rail-barge rates, and we therefore accept the interpretation of counsel for appellees.

the barge lines compete," say appellants. In short, the railroads complain of competition.

*First.* Appellants' attack upon the ground that the order gives a competitive advantage, not justified because not supported by a finding of lesser cost of barge service, is not persuasive. Admittedly, barge service is worth less than rail service. It is slower, requires more handling and entails more risk. A shipper will pay only what the service is worth to him. The shippers' evidence, the Commission found, indicated a fairly unanimous view that the principal worth to them of shipping by barge was the saving in transportation expense which it offered. The Commission is not bound to require a rate as high for the inferior as for the superior service. To do so would certainly destroy the principal worth of the inferior service and send all freight to the railroads; practically, there would be no competition between the different modes of transportation.

Neither the Commission nor this Court has held that lesser cost of service is a finding without which the Commission may not fix a charge, division of rate, or differential.[4] On the other hand, the considerations just discussed were rightly taken into account by the Commission. We must not lose sight of the fact that the Commission has the interests of shippers and consumers to safeguard as well as those of the carriers. *Ayrshire Corp.* v. *United*

---

[4] Both the Commission and this Court have consistently rejected any thought that costs should be the controlling factor in rate making. E. g., *New York* v. *United States,* 331 U. S. 284, 331; *Baltimore & O. R. Co.* v. *United States,* 298 U. S. 349, 359; *Louisiana Public Service Commission* v. *Texas & N. O. R. Co.,* 284 U. S. 125, 132; *Charges for Protective Service to Perishable Freight,* 241 I. C. C. 503, 510–511; *Proposed Lake Erie-Ohio River Canal,* 235 I. C. C. 753, 761; *Lighterage Cases,* 203 I. C. C. 481, 510; *West Coast Lumbermen's Assn.* v. *Akron, C. & Y. R. Co.,* 183 I. C. C. 191, 198–199; *Baltimore Chamber of Commerce* v. *Ann Arbor R. Co.,* 159 I. C. C. 691, 696–697.

*States,* 335 U. S. 573, 592. The accommodation of the factors entering into rate structures, including competition, is a task peculiarly for the Commission. *Id.,* at 593; *United States* v. *Pierce Auto Lines,* 327 U. S. 515, 535–536.

A carrier may, if it deems it advantageous, voluntarily accept a rate yielding a low return. *Baltimore & O. R. Co.* v. *United States,* 298 U. S. 349, 379. The Commission may permit it to do so if satisfied that the rate is compensatory, fair and reasonable, and in the public interest. *Id.,* at 358. Appellants intimate that the rates fixed are not compensatory with respect to the barge lines, and that the Commission knew they were not. compensatory. We disagree. The barge lines in the instant proceedings represented to the Commission that the differentials which they had proposed, and which were thoroughly examined and considered by the Commission in the light of the railroads' criticisms, were compensatory. From the Commission's report it appears that it substantially adopted the proposals of the barge lines. In any event, it is not apparent from the report that the Commission substantially exceeded these recommended differentials or was not warranted in adopting them. We conclude that the differentials fixed were considered by the Commission to be compensatory. 270 I. C. C. at 612, 613–617. If the rates obtained by the barge lines after applying the differentials are deemed to be less than relevant costs, a rate hearing is the proper proceeding to rectify prejudice flowing therefrom.

Here then, the barge lines, in order to protect the sole advantage of their service to the public, are willing to accept less for their inferior service than rail carriers receive for superior service. Competition was adjudged by the Commission to be worth preserving. That judgment was legitimately rested on relevant factors other than lesser cost of service. There is no provision in the

statute making relative costs of rail and water carriers the sole and controlling consideration in establishing joint rates. Indeed, the statute makes no mention of such costs at all. We do not say that relative costs when properly supported by evidence are not a matter to be considered, but we cannot say that the absence of that factor is fatal.

With respect to appellants' argument that the inferior barge service cannot be given at a lower rate than the superior without a finding that the inferior costs less than the superior, we note further that even if rail costs were no more than barge costs it would not follow that barge rates must be as great or greater than the rail rates. The rail rates may be too high. From their arguments, it appears to be the purpose of the railroads to eliminate the differentials, and thus, competition, not by reducing the all-rail rates but by increasing the rail-barge rates. The observation of Judge Lindley for the District Court is pertinent: "Of course, if the railroads were petitioning the Commission for a reduction in all-rail rates, proof of lower operating costs might well warrant such a reduction, but it is difficult to see how the lower costs of the railroads, if satisfactorily proven, would warrant an increase in the rates of a competitor." 88 F. Supp. 982, at 987.

*Second.* It has been contended by appellants that without a finding or any evidence to support a finding that barge costs are lower than rail costs, there is no basis for the Commission's order other than the Commission's determination that its order is in accordance with general expressions of congressional policy. It is apparent from the Commission's report that it gave careful consideration to numerous expressions of congressional policy. See particularly, 270 I. C. C. at 609–613. This it was in duty bound to do. But it is also apparent, as we have already indicated, that the Commission gave careful consideration to other factors—factors such as the tremendous

loss of traffic to the barge lines due to a loss of interchange traffic; the inferiority of the barge service; the shippers' testimony to the effect that they would not use barge service unless it were cheaper to do so; the compensatory character of the differentials adopted; the willingness of the barge lines to accept rates yielding low returns; as well as the fact that elimination of the differentials would curtail competition, and that this would negate support, financial and otherwise, which Congress had given Federal while it pioneered in the field of barge transportation.

*Third.* Appellants also contend that the prescription of differentials in this proceeding deprives them of their inherent advantages contrary to the National Transportation Policy.[5] They point to *I. C. C. v. Mechling,* 330 U. S. 567, as having established the principle that the lower costs of the barge carrier there involved was an inherent advantage, and that the Commission had no discretion to approve a rate structure which would reduce such advantage. They argue that the "fair and impartial regulation" called for by the National Transportation Policy demands

---

[5] "It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy." 54 Stat. 899, 49 U. S. C. (1946 ed.), p. 5443.

that the rule of the *Mechling* case be applied impartially to protect the "inherent advantage" of the rail carriers here.

In the *Mechling* case, the Commission had fixed a rate for transportation of wheat east by rail from Chicago at a rate higher if it arrived in Chicago by barge than if by rail or lake. This was a plain case of discrimination. There were different rates provided for equal service without any showing that any additional service was rendered for the additional charge. Here the question is whether the barge lines may charge less than the railroads for the different service they render. There is no unlawful discrimination here as there was in the *Mechling* case. The differentials providing a lower rate for barge service do not constitute an "unjust discrimination" by express proviso of § 305 (c) of the Act. 54 Stat. 935, 49 U. S. C. § 905 (c).

The joint rail-barge rates prescribed neither ignore nor destroy the inherent advantage of rail traffic. The "inherent advantage" of rail carriers shown here is superiority of service. The joint rail-barge rates do not fail to reflect this "inherent advantage" for the same reason that a man who wishes to ride quickly and comfortably buys a Pullman ticket on a fast train instead of a coach seat on a "milk run" train. No one would contend that fixing a lower price on the "milk run" train seat fails to preserve the superior accommodations offered by a Pullman space. Each mode of transportation satisfies the needs and wants of some customers. It is for the customer to decide which mode satisfies his circumstances.

*Fourth.* As to the contention of appellants that the Commission's order is not supported by essential findings of fact, § 14 (1) of the Interstate Commerce Act, 49 U. S. C. § 14 (1), does not require the Commission to make detailed findings of fact except in a case where damages are awarded. *Manufacturers R. Co.* v. *United*

*States,* 246 U. S. 457, 487, 489–490. The statute requires the Commission only to file a written report, stating its conclusions, together with its decision and order. This the Commission did, and the essential basis of its judgment is sufficiently disclosed in its report. Of course § 14 (1) does not relieve the Commission of the duty to make the "basic" or "quasi-jurisdictional" findings essential to the statutory validity of an order. *Florida* v. *United States,* 282 U. S. 194, 215; *United States* v. *Baltimore & O. R. Co.,* 293 U. S. 454, 464–465. And the basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented. E. g., *United States* v. *Pierce Auto Lines,* 327 U. S. 515; *North Carolina* v. *United States,* 325 U. S. 507; *Yonkers* v. *United States,* 320 U. S. 685; *United States* v. *Carolina Carriers Corp.,* 315 U. S. 475. Here the Commission found, in conformity to the statute invoked, *supra* note 2, that the differentials prescribed are "justified as reasonable" and "necessary and desirable in the public interest." And "the report, read as a whole, sufficiently expresses the conclusion of the Commission, based upon supporting data . . . ." *United States* v. *Louisiana,* 290 U. S. 70, 80. Enough has been "put of record to enable us to perform the limited task which is ours." *Eastern-Central Assn.* v. *United States,* 321 U. S. 194, 212.

Appellants in Nos. 46, 47, and 48 were permitted to intervene in the District Court as parties plaintiff. They represent various commercial interests allegedly affected adversely by the order of the Commission. The only points urged by these appellants not answered in No. 45 are that the order gives a preference to the port of New Orleans over certain ports of Georgia and Texas, in violation of the Interstate Commerce Act and of Art. I, § 9, cl. 6 of the Federal Constitution.

With respect to the constitutional argument, this Court in *Louisiana Public Service Commission* v. *Texas & N. O. R. Co.*, 284 U. S. 125, 131, stated:

> "The clause of the Constitution invoked is: 'No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another; Nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.' The specified limitations on the power of Congress were set to prevent preference as between States in respect of their ports or the entry and clearance of vessels. It does not forbid such discriminations as between ports. Congress, acting under the commerce clause, causes many things to be done that greatly benefit particular ports and which incidentally result to the disadvantage of other ports in the same or neighboring States."

And we are clear that whatever preference there is to New Orleans is the result of geography and not of any action of the Commission. "The law does not attempt to equalize fortune, opportunities or abilities." *I. C. C.* v. *Diffenbaugh*, 222 U. S. 42, 46.

*Affirmed.*

Mr. Justice Douglas, dissenting.

I agree that the differentials established under § 307 (d) of the Act need not be measured by the difference in cost between rail and barge transportation. Barge costs as compared with rail costs are, however, a relevant factor for consideration by the Commission under § 307 (f)* when it determines what differentials are reasonable.

---

*"In the exercise of its power to prescribe just and reasonable rates, fares, and charges of common carriers by water, and classifications, regulations, and practices relating thereto, the Commission shall give due consideration, among other factors, to the effect of rates upon the movement of traffic by the carrier or carriers for

When the Commission proceeds to fix differentials without knowing what the relative barge and rail costs are, it is to my mind experimenting as a legislative body might do, not performing the infinitely more exacting task of the rate expert.

The Commission practically concedes that in this case it adopts a different standard than the statutory one. It is admitted that on this record there can be no adequate findings on costs. The evidence for an earlier period (1933–1938) shows that the cost for joint rail-barge routing is greater than for direct all-rail routing. The Commission refused to pursue the cost study into later years. The reason is apparent. One of the appellees is Inland Waterways Corp. which operates Federal Barge Lines. Inland is a federal corporation (43 Stat. 360, 49 U. S. C. § 151) and it and Federal are subsidized by Congress. It is that program that the Commission is seeking to promote here. That may be important and desirable. But the standards which guide the Commission are still found in § 307 (f). Costs have some relevance to the problem of differentials as § 307 (f) makes clear. Congress is entitled to disregard costs completely. But I do not think the Commission is.

---

which the rates are prescribed; to the need, in the public interest, of adequate and efficient water transportation service at the lowest cost consistent with the furnishing of such service; and to the need of revenues sufficient to enable water carriers, under honest, economical, and efficient management, to provide such service." 54 Stat. 938.