**SOUTHERN BAKERS ASSOCIATION,
Inc. and Atlantic Baking Company,**

v.

**UNITED STATES of America and Inter-
state Commerce Commission.**

No. 4826.

United States District Court,
N. D. Georgia, Atlanta Division.

Aug. 16, 1954.

Gambrell, Harlan, Barwick, Russell & Smith, Atlanta, Ga., for petitioners.

James E. Kilday, Willard R. Memler, Joseph V. Gallagher, Sp. Assts. to Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., James W. Dorsey, U. S. Atty., Atlanta, Ga., for the United States.

I. K. Hay, Leo H. Pou, Asst. Chief Counsel, and Edward M. Reidy, Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

Before RIVES, Circuit Judge, HOOPER, Chief Judge, and SLOAN, District Judge.

SLOAN, District Judge.

The order of the Interstate Commerce Commission which petitioners here seek to have set aside, was entered by the Commission as a result of an investigation instituted by reason of the filing of a complaint which was assigned I.C.C. Docket No. 29777. This complaint was construed and treated by the Interstate Commerce Commission (hereinafter called "Commission") as a request for further consideration of certain major issues which had been previously disposed of in two general proceedings concerning carload freight rates on grain and grain products.

In 1925, in response to the Hoch-Smith Resolution,[1] the Commission instituted a general investigation of grain rates throughout most of the United States. The first proceeding, known as the "Grain Case"[2] after having been reopen-ed by the Commission in response to the Mandate of the Supreme Court,[3] was, by a supplemental report of October, 1934,[4] made effective July 1, 1935 and that report concerned the rates on these commodities throughout the Western District, described in the report as the territory west of the Great Lakes and on the West of the Mississippi River (including eastbank points), Illinois and the upper peninsula of Michigan. A general readjustment of the rates was accomplished by the prescription of rate-break combinations of flat rates to the principal markets (including Omaha, Neb., Kansas City, Mo., Minneapolis and Duluth, Minnesota) and proportional rates therefrom to final markets and gateways (including Chicago, Ill., St. Louis, Mo., and Memphis, Tenn.).

The record of these proceedings was entitled "Grain to, From and Within Southern Territory" and is called the "Southern Case."[5] That proceeding concerned rates within the South and from other territories to the South. The prior general adjustment of rate-break combinations was therein extended into the South by combinations on Memphis, St. Louis and other river gateways.

Complaint No. 29777.

That complaint was filed by the State Corporation Commission of Kansas on behalf of the grain producers, dealers and processors of that State. The complaint alleged that railroad freight rates on grain and grain products in carload lots from origins in Oklahoma and Texas were unduly preferential to producers and shippers in Oklahoma and Texas (on the north of the main line of the Texas and Pacific Railway from El Paso to Texarkana, Texas through Fort Worth and Marshall) in violation of Sec. 3 of the Act, 49 U.S.C.A. § 3. The complaint attacked as unreasonable and preferential the proportional rates from Oklahoma and North Texas to Memphis, Ten-

1. U.S.C.A., Title 49, Sec. 55.

2. 205 I.C.C. 301.

3. Atchison, T. & Santa Fe Ry. v. U. S., 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273.

4. 215 I.C.C. 83.

5. 239 I.C.C. 629.

nessee as components of through combinations rates to the South. Named as defendants in this complaint were the Atchison, Topeka and Santa Fe Railway Company, and other railroads.

The complaint does not allege that the Oklahoma and Texas rates are too low, nor does the complaint ask that these rates be increased. The complaint alleges that the Kansas rates as compared to the Texas and Oklahoma rates are preferential to Texas and Oklahoma and prejudicial to Kansas, and the complaint merely prays that the Commission prescribe such other rates in lieu of the rates complained of as the "Commission may deem reasonable."

The Commission's decision in that proceeding found that the existing rate structure was unreasonable and unduly preferred Southern Kansas, Oklahoma and Texas and unduly prejudiced Northern Kansas and other areas. The Commission's order required western railroads to increase freight rates on grain and grain products from origin points in South Kansas, Oklahoma and North Texas to points in the South. This increase in freight rates the Commission found would effectively remove the preferences and prejudices which the Commission found to exist.

Although the Commission's decision in that proceeding is dated June 5, 1953, and the rates prescribed were to become effective on October 22, 1953, the effective date has been extended until September 1, 1954.

The complaint here:

Petitioners here, the Southern Bakers Association, Inc., and the Atlanta Baking Company, Inc., seek a review of the orders of the Commission, Interlocutory Injunction, and Temporary Restraining Order.

Alleging a direct, substantial and vital interest in the proceeding, petitioners assert that as consumers and consignees they are legally entitled to have freight rates prescribed by the Commission in a legal manner.

Interventions, as plaintiffs, by the Corporation Commission of the State of Oklahoma, Enid Board of Trade and Oklahoma Millers Association have been allowed and the Court will give consideration to the questions made in the complaint and interventions.

In determining the questions here this Court must and does recognize the "rule of administrative finality" governing judicial review of Commission decisions.

 The Court here confines itself to the ultimate questions as to whether the Commission acted within its power, and whether the order is based upon adequate findings which in turn are supported by substantial evidence. The findings of the Commission are made by law prima facie true. The Court in any case will not examine the facts further than to determine whether there was substantial evidence to sustain the order.[6] However, in this case the complainants herein having determined not to introduce into evidence the transcript of the evidence before the Interstate Commerce Commission, this Court will not consider the question as to the sufficiency of the evidence raised by the complaint but will treat the findings of the Commission as being properly supported by evidence.[7] Eliminating the questions which depend upon the sufficiency of the evidence, the questions remaining to be determined by the Court are:

1. Did the Commission make adequate subsidiary findings to support the ultimate findings?

2. Did the Commission observe the statutory requirements of Sec. 15a(2) of the Act, 49 U.S.C.A. § 15a(2) in prescribing the higher rates?

3. Was the Commission required to publish notice of the proceeding in the Federal Register as required by Sec. 4 (a) of the Administrative Procedure Act [5 U.S.C.A. § 1003(a)]?

6. Interstate Commerce Commission v. Union Pacific Railroad, 222 U.S. 541, 549, 32 S.Ct. 108, 56 L.Ed. 308.

7. Mississippi Valley Barge Line Co. v. U. S., 292 U.S. 282, 287, 54 S.Ct. 692, 78 L. Ed. 1260.

In seeking a determination of these questions the Court is mindful of the fact that rate making problems are complicated and involve the exercise of judgment born of intimate knowledge of the particular activity and the making of adjustments and qualifications too subtle for the uninitiated.[8]

"The process of rate making is essential empiric. The stuff of the process is fluid and changing—the resultant of factors that must be valued as well as weighed. Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems."[9]

In the proceeding before it the Commission had first to decide whether the existing rates were unreasonable, unduly preferential and prejudicial.

The Commission found the existing rates to be unreasonable, unduly preferential to Southern Kansas, Oklahoma and Texas and to the prejudice of Northern Kansas, Nebraska and other named states, to the extent that they failed to conform to the flat rates from those states to Memphis.

Having found the existing rates to be unreasonable, unduly preferential and prejudicial, the Commission was required to determine what rates should be prescribed to remove the prejudices and preferences. Determining this question, the Commission found that the proportional rates lower than the flat rates from Southern Kansas, Oklahoma and Texas to Memphis, should be cancelled.

This cancellation made effective the rates complained of here.

The Commission considered that the existing rates of the defendant carriers were the lowest possible lawful rates and found this to be sustained and corroborated by the findings of the Commission in the "Grain Case" (205 I.C.C. 301) and the "Southern Case" (259 I.C.C. 629) wherein the Commission determined that the rates fixed were in full compliance with the requirement of the Hoch-Smith Resolution, 49 U.S.C.A. § 55, to the effect that the lowest possible lawful rate on agricultural products be prescribed.

The Commission found that any decrease in existing rates from the Northern Kansas level would result in an unwarranted reduction of the revenues of the carriers and would result in a general disruption of the prescribed rate levels.

Plaintiffs complain that the Commission failed to make essential findings of fact that would support its order and failed to make subsidiary or subordinate findings supporting the conclusions of the Commission.

As we have pointed out, the Commission had two ultimate questions before it:

1. Were the existing rates unreasonable and unduly preferential and prejudicial?

2. What rates should be prescribed in lieu of the existing rates?

The report of the Commission, in narrative form, which is approved by our courts,[10] disclosed many subsidiary findings, among which are two such findings which the Commission, in part at least, found as reasons for its determination:

1. Removal of undue preferences and prejudices by reduction of rates rather than by an increase, would result in unwarranted reduction in carrier revenues, and

2. Would result in a general disruption of prescribed rate levels and relations.

 These findings are themselves subsidiary findings and constitute an ade-

8. State of New York v. United States, 331 U.S. 284, 335, 67 S.Ct. 1207, 91 L.Ed. 1492.

9. Board of Trade of Kansas City, Mo. v. U. S., 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432.

10. Alabama Great Southern Ry. Co. v. U. S., 340 U.S. 216, 227–228, 71 S.Ct. 264, 95 L.Ed. 225.

quate basis and statement of reasons and fully meet the requirements of Sec. 8 of the Administrative Procedure Act, 5 U.S.C.A. § 1007.

■ There is nothing before us to indicate that the Commission did not observe the statutory requirement of Sec. 15a(2) of the Act in prescribing the higher rates. The presumption is that, in the performance of its duty, the Commission observed those requirements.

Plaintiffs complain that they had no notice of the proceedings before the Commission; that the Commission failed to give adequate notice even to those who were parties to the case. Plaintiffs insist that Sections 4(a) and 4(b) of the Administrative Procedure Act require the publication of notice in the Federal Register which was not done.

This proceeding was begun with the filing of a complaint under Sec. 13(2) of the Act, 49 U.S.C.A. § 13(2), by the State Corporation Commission of Kansas which named as defendants the rail carriers whose rates were alleged to be unjust and unreasonable in violation of Sec. 3 of the Act, and said complaint further alleged that said rates as compared to rates to the same destination from origins in Oklahoma and Texas are unduly prejudicial to producers and shippers in Kansas and unduly preferential to producers and shippers in Oklahoma and Texas.

So far as the record discloses, the carriers were served and filed answers. The matter was referred to examiners who held hearings; filed a Report; Exceptions and Briefs were filed, argument had, and the case submitted to the Commission for decision.

From the date of the filing of the complaint on June 26, 1947 to June 5, 1953, the date of the Commission's decision—a six year period, many interventions were filed.

Between July 15, 1947 and June 4, 1951, petitions for leave to intervene in Docket No. 29,777 were filed by Board of Trade of Kansas City, Missouri; Merchants Exchange of St. Louis, Missouri; The Texas Industrial Traffic League; Pillsbury Mills, Inc.; Fort Worth Grain and Cotton Exchange; Indianapolis Board of Trade, Inc.; Acme-Evans Co., Inc.; Omaha Grain Exchange; Nebraska State Railway Commission; Board of Trade of the City of Chicago; State Corporation Commission of the State of Kansas; Kansas-Missouri River Mills; New Orleans Traffic and Transportation Bureau; The Hutchinson Board of Trade, Hutchinson, Kansas, and Russell-Miller Milling Company.

Subsequent to the decision of the Commission of July 5, 1953, and during the month of September, 1953, interventions were filed by Southern Bakers Association, Inc., North Carolina Utilities Commission and North Carolina Bakers Council, Inc.

■ Under the facts in this case, where the relief sought by the complaint was an order directed against the defendant rail carriers who were served and answered, and against no one else, Sec. 4(a) of the Administrative Procedure Act does not require the publication of notice, since this proceeding comes within the exception to the provision.[11] Consignees and consumers are not directly subject to the order, and in its indirect effect upon them, their interests were sufficiently represented by the Commission itself, a public agency created by Congress.

■ The Commission was not required to state grounds for the denial of plaintiffs' petition for rehearing, and reargument, this matter resting within the discretion of the Commission.[12]

■ The orders which plaintiffs attack were entered after hearing and rehearing, and upon consideration and

11. Sec. 4 (a). "*Notice.*—General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have

actual notice thereof in accordance with law * * *."

12. Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336.

evaluation of the evidence introduced upon the hearings. The findings of fact relate to complex rate problems. That the findings are supported by substantial evidence cannot be questioned here and this Court will not interfere.

The other grounds of objection urged by plaintiffs have been considered but do not require a different result.

The order and findings of the Commission, here attacked, are sustained and this action dismissed.