**NORFOLK & WESTERN RAILWAY COMPANY et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. 774.**

United States District Court
W. D. Virginia.

Sept. 27, 1956.

J. P. Fishwick, Roanoke, Va. (R. B. Claytor, Roanoke, Va., Robert H. Bierma, Chicago, Ill., Kemper A. Dobbins, Cleveland, Ohio, John W. Hanifin, Richmond, Va., Martin A. Meyer, Jr., Washington, D. C., Richard J. Murphy and Erle J. Zoll, Jr., Chicago, Ill., on the brief), for Norfolk & W. Ry. Co.

Charles R. Esherick, Dept. of Justice, Washington, D. C. (Victor R. Hansen, Asst. Atty. Gen., James E. Kilday, Atty., Dept. of Justice, Washington, D. C., and John Strickler, U. S. Atty., Roanoke, Va., on the brief), for the United States.

Leo H. Pou, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C. (Robert W. Ginnane, Washington, D. C.; on the brief), for Interstate Commerce Commission.

Harvard R. Osmond, Chicago, Ill. (David O. Mathews, Chicago, Ill., John R. Sims, Jr., Washington, D. C., on the brief), for intervenor Chicago & E. I. R. Co.

Homer S. Carpenter, Washington, D. C. (William M. Maddox, Washington, D. C.; and William B. Hopkins, Roanoke, Va., on the brief); for intervenor Property Owners' Committee.

Before SOPER, Circuit Judge, PAUL, Chief Judge, and BARKSDALE, District Judge.

PER CURIAM.

The Norfolk and Western Railway Company and twenty-one other important coal-carrying railroads in eastern and midwestern United States brought this action against the United States under the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.,[1] to secure the adjudication of a three-judge court annulling and setting aside certain orders of the Interstate Commerce Commission as arbitrary and capricious and contrary to law. The orders approved a rate proposed by the Chicago and Eastern Illinois Railroad Company (C&EI) of $1.89 per net ton on shipments of bituminous coal in quantities of not less than 2,000 net tons moving as one shipment to one consignee from Mt. Vernon, Indiana to the Chicago area. The C&EI and the Property Owners Committee, an association of coal mine operators and owners in Virginia, southern West Virginia and eastern Kentucky, intervened in opposition to the complaint. The rate was also actively supported by the United States Steel Corporation and Inland Steel Company, which are consumers of large quantities of bituminous coal in the production of coke.

Mt. Vernon, Ind., a point on the Ohio River 339 miles west of Cincinnati, is the terminus of a branch line on the C&EI extending about 38 miles southwest from Mt. Vernon junction on the main line of the railroad from Evansville to Chicago. The orders complained of grew out of the publication by C&EI, effective April 6, 1953, of a rate of $1.89 per net ton on carload shipments of bituminous coal for coking and carbonization purposes from Mt. Vernon to Chicago, the rate being restricted to shipments originating in eastern Kentucky and West Virginia and moving thence to Mt. Vernon by rail-barge or by barge on the Ohio River. The plaintiffs and other railroads intervened as protestants against the rate but it was permitted to go into effect and the matter was handled under the Commission's Rules of Practice whereby the parties serve statements of the evidence upon which they rely, and oral hearing is limited to cross-examination of witnesses, if desired. Under this procedure the matter came up for hearing before an examiner of the Commission on February 4 and 5, 1954, and later upon exceptions to the examiner's report before Division 2 of the Commission. On January 31, 1955, Division 2 issued its report, 294 I.C.C. 233, wherein it found that the proposed rate had not been shown to be reasonably compensatory and that it was unjust, unreasonable and discriminatory. Hence the Commission ordered the cancellation of the rate without prejudice; however, to the establishment of a rate not lower than $2.05 per ton unrestricted in its application to shipments.

Thereupon C&EI filed a petition for reconsideration and expressed its willingness to publish the approved rate of $2.05 as a single-car rate and the $1.89 rate as a volume rate applicable on shipments in lots of 2,000 net tons or more at one time billed to a single consignee in the Chicago area, the rates to be without restriction to shipments for coking or carbonization purposes. The Commission postponed the effective date of its order of January 31, 1955, and gave consideration to the new proposal and to the replies thereto of the protesting railroads and found that the proposed rate of $1.89, as modified, to be reasonably compensatory, consistent with the national transportation policy, and in all respects lawful. A petition of the complainants for reconsideration was denied on January 23, 1956, 296 I.C.C. 489.

The plaintiffs contend that the Commission's orders are illegal on the ground that the volume restriction in the approved rate was first suggested by C&EI in its petition for consideration and that there is no evidence in the record that the rate of $1.89 on a volume basis would result in lower costs to C&EI; and hence there is no rational basis for the conclusion that the rate would become just and reasonable merely because it is restricted to shipments of 2,000 net tons or more

1. See 28 U.S.C. §§ 1336, 1398, 2321, 2322, 2325.

moving as one shipment to a single consignee.

In reaching its original decision the Commission found in effect that the shipment of coal over the described route was practicable and that the respondent railroad possessed sufficient cars and transfer facilities to handle the traffic adequately. The rate as originally published applied to bituminous coal (for coking or carbonization purposes) in carload lots from Mt. Vernon to Joliet, south Chicago, and Chicago, Ill. and Gary, Ind. from mines in eastern Kentucky and western Virginia and moving to Mt. Vernon by rail-barge or by barge on the Ohio River. It was shown that the steel companies had much need of the coal produced in these regions and that an annual movement of 15 million tons from the mining districts to the Chicago area might be expected, of which the respondent railroad estimated the movement of one million tons through Mt. Vernon.

The Commission ascertained the aggregate cost of moving the coal at the proposed rate over the rail-barge-rail route from the coal fields through Mt. Vernon to Chicago and in determining whether the rate would be compensatory compared the yield which would accrue to the C&EI from the traffic with the yield from existing proportional rail rates which had been established for the movement of coal from various eastern groups to the lower Lake Erie ports for movement beyond by lake vessel.

For this purpose the Commission cited its decision in *Reduced Rates on Coal from the East to the Northwest*, 292 I.C.C. 119, where it found that for distances averaging 361.7 miles from the eastern Kentucky, Kenova, Thacker, Kanawha, New River, Tug River, Pocahontas and Clinch Valley districts to Sandusky, an average yield of 6.65 miles a ton mile was attained.

The Commission then found that the distances from Mt. Vernon to the various points of delivery in the Chicago area averaged 301.57 miles and that for this haul the yield at the $1.89 rate was 6.275 mills a ton mile; and that in order to produce a yield of 6.65 mills on this distance a rate somewhat higher than $2.00 would be required; and it was found that a rate of $2.05 would result in an aggregate expense for traffic via Mt. Vernon which would be somewhat lower than the all-rail rates applying from the high volatile coal mining districts, except the aggregate expense from Gary, which would be somewhat greater than the all-rail rate. The Commission therefore concluded that the rate under investigation was not shown to be reasonably compensatory and that it was unjust, unreasonable and discriminatory. It, therefore, entered an order requiring the cancellation of the rate without prejudice to the establishment of a rate not lower than $2.05, unrestricted in its application to shipments for a stated purpose.

Thereafter, as we have seen, the C&EI petitioned for reconsideration of the Commission's decision and suggested in its petition that it would be willing to publish the $1.89 rate on a volume or multiple carload basis, that is, with a minimum of 2,000 tons moving as one shipment to a single consignee. In support of the petition the railroad alleged that there was error in certain factual statements and in the findings and conclusions in the Commission's report.

Upon reexamination the Commission found that in its first report, in calculating the aggregate rail-barge-rail cost on shipments of coal for the steel companies from Gary, W. Va. and Price, Ky. to Ceredo on the Ohio River thence by barge to Mt. Vernon, it had understated a transportation charge at Ceredo by the sum of 15-cents per ton. Making the necessary correction in this respect the Commission found that at the $2.05 rail rate beyond Mt. Vernon the aggregate transportation cost from Gary and Price would exceed the competitive all-rail charges and bar the use of the route through Mt. Vernon.

The Commission also pointed out that the $2.05 rate for an average distance of 301.57 miles would yield 6.797 mills a ton mile. Moreover, the Commission's attention was called to the fact that the com-

putation of an average yield of 6.65 mills for the average distance of 361.7 miles in its decision in *Reduced Rates on Coal from the East to the Northwest, supra,* reflected the distances from only 8 of the 16 eastern origin districts to Sandusky. It was shown that the average distance was actually 408 miles when all of the 16 districts were taken into consideration and that for that distance the ton mile yield was only 5.72 mills a ton mile. The last mentioned figure is to be compared with the average yield of 6.275 mills from the $1.89 rate. With these figures before it the comparison of the Commission in its first decision based on the *Reduced Rates* case lost its significance, since the computations before it at the second hearing showed that the yield at $1.89 rate was greater than the yield which the Commission had approved in the cited case. It was on this ground that the Commission reconsidered its former decision and approved the $1.89 rate for volume shipments.

In doing so it commented upon the fact that the finding of unjust discrimination in its prior decision related to the commodity description restricting the application of the $1.89 rate to shipments for coking and carbonization purposes. This restriction was originally proposed by the C&EI so as in effect to confine the shipments to coal used by the steel companies and to avoid the opposition of the producers of competitive western coal which is not suitable for coking purposes. The Commission was of the opinion that the restriction was discriminatory and it was therefore eliminated from the rate.

The final conclusion of the Commission in its second decision is stated in these words:

"On reconsideration, we find that the rate of $1.89 in issue is, and for the future will be, unjust, unreasonable, and unjustly discriminatory in and to the extent that it is made subject to a minimum of less than 2,000 net tons consigned as one shipment to one consignee, and is restricted in its application to coal used for a stated purpose. We further find that, as thus modified in its application, the rate will be reasonably compensatory, consistent with the national transportation policy, and in all respects lawful. The prior findings are modified accordingly. The order of January 31, 1955, will be vacated, and an order requiring the respondent to cease and desist from the violations of law found to exist will be entered."

The basic argument of the complaining railroads is that this condemnation of the $1.89 rate for carload shipments and the approval at the same time of the rate for volume or multiple carload shipments cannot be rationally justified. It is pointed out that the rate which was approved in *Reduced Rates on Coal, East to Northwest,* 222 I.C.C. 119, and was used as a standard by way of comparison in support of the Commission's conclusions in the pending case was itself a carload rate, and so it is said that that decision would logically support a carload as well as a volume rate of $1.89 a ton. It is therefore contended that the case should be returned to the Commission for further consideration.

We think that this procedure would serve no good purpose since it is obvious that the rate actually authorized by the Commission was approved after careful consideration and is supported by the substantial evidence found in comparison with the established rate for shipments on the Great Lakes. Indeed, the rate approved in the pending case was consistent in practical effect with the rate approved in that case since it was there shown, 299 I.C.C. 119, 125, that lake cargo coal moves in large volumes and generally in multiple car or train load quantities. It must be borne in mind that the limitation in the approved rate is not injurious to the competing railroads but effects only the C&EI, which is not complaining of the restriction but actually proposed it. In our opinion it would be a futile and meaningless step to set aside the order of the Commission on the ground that the carrier did not receive all that might have logically been

granted. It may be added that the order as promulgated is supported by the acknowledged fact that volume shipments can be transported at less cost. The findings of fact of the Commission were supported by the evidence and were sufficiently stated in accordance with the procedure in Alabama-Great Southern R. Co. v. United States, 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225. An Order of the Court dismissing the complaint will be filed.