SOUTHERN PACIFIC COMPANY, the Atchison, Topeka and Santa Fe Railway Company, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Sears, Roebuck and Co., Glastron Boat Company, and Larson Industries, Inc., Intervenors.

Civ. A. No. 49677.

United States District Court
N. D. California.

Feb. 11, 1969.

Frederick G. Pfrommer, Leland E. Butler, Charles W. Burkett, A. T. Suter, San Francisco, Cal., for plaintiffs and intervening plaintiffs.

Edwin M. Zimmerman, John H. D. Wigger, Washington, D. C., and Cecil F. Poole, San Francisco, Cal., for United States.

Robert W. Ginnane and Steven Kazan, Washington, D. C., for Interstate Commerce Commission.

Walcom & Harmon, San Francisco, Cal., and Eugene D. Anderson, Chicago, Ill., for Sears, Roebuck and Co., Glastron Boat Co. and Larson Industries, Inc.

MEMORANDUM and ORDER

Before HAMLIN, Circuit Judge, and ZIRPOLI and BURKE, District Judges.

LLOYD H. BURKE, District Judge:

This is an action before a statutory three-judge court [28 U.S.C. §§ 1336, 2284, 2321–2325] to annul and set aside a Report and Order of the Interstate Commerce Commission. In the Report, Boats on Multi-Level Cars, 332 I.C.C. 468 (1968) the Commission concluded that the two railroads (plaintiffs herein) had failed to discharge their burden of proving that certain proposed rate increases were just and reasonable. Consequently, the Commission ordered the carriers to withdraw and cancel the proposed tariff provisions.

In the tariff schedules filed with the Commission the railroads sought a substantial increase in the freight rates applicable to boats shipped on multi-level railway cars. Stanray Corporation, Glastron Boat Company and Sears, Roebuck & Company, the three largest shippers of small pleasure boats in the United States (and intervening defendants in this action), all filed protests.

From the Commission's report it appears that Stanray, dissatisfied with both the conventional railway flatcar and the tri-level car (used primarily for carrying automobiles) developed and pro-

duced, on its own initiative, a unique type of rail equipment. Stanray's multi-level cars were especially suited to the transportation of small pleasure boats because, unlike the permanently fixed decks of the automobile cars, Stanray's cars were equipped with adjustable racks. These racks could be adapted to varying heights and lengths and thus made it possible to include in the same shipment a complete line of pleasure boats without regard to shape or size.

Stanray invested nearly $800,000 in the design and production of 31 of these specially equipped boat cars. The three protesting shippers use Stanray's cars, supplemented by a few developed by Glastron, almost exclusively.

Before the Commission both the railroads and the shippers introduced cost evidence. The dispute arose because the rail evidence was premised on the use of freight-cars furnished by the railroads while the opposing evidence was predicated on the use of freight cars furnished by the shippers.

In reaching their cost estimates the railroads took into account not only their ordinary running expenses but also a daily car rental rate which reflected the cost of development, construction, financing and repair of the specially designed boat cars.

The protestants contended that since they shipped their boats almost exclusively on their own boat cars all car ownership costs should be excluded from the railroad's cost estimates. They pointed out that while the railroads sought to build into their rates a per diem car rental expense equivalent to about $450 per shipment, the actual expense was no more than $30 in mileage allowances for the same shipments. In other words, on the one hand the railroads were charging the shippers around $450 per shipment to cover hypothetical costs for leasing multi-level cars suitable for the transportation of boats but on the other hand the railroads were paying the very same shippers only $30 per shipment for the use of the very same cars. In sum, the protestants asserted that the railroads were seeking to justify their proposed rates on the basis of costs that included a sizeable expense in the form of car rentals which the railroads simply did not experience insofar as these three protestants were concerned.

Since the Commission found that the carriers had not met their burden of proving that the proposed rates were just and reasonable, the Commission evidently agreed with the protestants' position.[1]

In this proceeding the plaintiffs' sole position is that as a matter of law the Interstate Commerce Commission must base its conclusion, so far as cost evidence is concerned, solely upon the cost of transportation in carrier-furnished equipment. Plaintiffs contend that the Commission is precluded from giving any weight whatever to the fact that in this case the shippers, and not the carrier, supply the boat cars.

The carriers argue that under 49 U.S.C. §§ 1(4) and 1(11) the railroads have a statutory duty to provide safe and adequate cars for the transportation of boats. Having that duty, they also have the correlative right to provide such cars. General American Tank Car Corp. v. El Dorado Terminal Co., 302 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940); Atchison, Topeka & Santa Fe Railway Co. v. United States, 232 U.S. 199, 34 S.Ct. 291, 58 L.Ed. 568 (1914). Accordingly, the carriers claim that the fact of car ownership is irrelevant; the freight rates

---

1. Plaintiffs contend that the Commission's order is not supported by certain essential findings. "The statute requires the Commission only to file a written report, stating its conclusions, together with its decision and order. This the Commission did, and the essential basis of its judgment is sufficiently disclosed in its report." Alabama Great Southern Railroad Co. v. United States, 340 U.S. 216, 228, 71 S.Ct. 264, 272, 95 L.Ed. 225 (1951). See also Soo Line Railroad Co. v. United States, 271 F.Supp. 869 (D. Minn.1967).

must be based on cost data including an allocation for car ownership whether or not such costs are actually incurred.

If the railroads, in order to meet their statutory service obligations, make substantial investments in building specially equipped cars, it would be both unfair and economically disastrous to permit the shippers the option of using the carriers' cars or their own. Having been forced to invest the money, the railroads are entitled to a guarantee that they will have a chance to recoup their investment. Thus, ordinarily, the rental charge is the same whether the shipper uses the carriers' equipment or his own equipment.

Here, however, the investment was made not by the railroads but by the shippers. The Report discloses that when Stanray first developed these cars the railroads had no similar equipment of their own. Furthermore, at oral argument, counsel for the railroads conceded that even today the railroads have so few boat cars that they would be unable to meet the demand for such cars should Stanray withdraw its private cars from use.

The reason for permitting a railroad to refuse to accept privately owned equipment at a lower rate is to protect the railroad's required investment. Here the railroads have made no investment and the enforcement of such a rule would create a windfall for the railroads and impose a penalty upon the shippers.

Considering that the railroads were seeking to recoup costs which were never expended by them, we cannot say that the Commission erred in finding that the railroads had failed to discharge their burden of proving that the proposed rates would be just and reasonable. We note also that lower rates to reflect shipper supplied equipment are not without precedent. See Natural Gas Pipeline Co. v. New York Central Railroad Co., 323 I.C.C. 75 (1964); Switching at St. Louis and East St. Louis, 120 I.C.C. 216 (1926); cf. Cooper-Jarrett, Inc. v. United States, 226 F.Supp. 318 (W.D. Mo.1964), *aff'd per curiam,* 379 U.S. 6,

85 S.Ct. 49, 13 L.Ed.2d 21 (1964); Atchison, Topeka & Santa Fe Railway Co. v. United States, 232 U.S. 199, 34 S.Ct. 291 (1914).

Accordingly, the complaint is dismissed and the decision of the Interstate Commerce Commission is approved.