The **ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al.**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America.**

Civ. A. No. 75–201.

United States District Court, E. D. Pennsylvania.

Nov. 24, 1975.

**1328**

Donald A. Brinkworth, Philadelphia, Pa., for plaintiffs.

Kenneth A. Ritchie, Asst. U. S. Atty., Robert B. Einhorn, Philadelphia, Pa., for defendants.

Before VAN DUSEN, Circuit Judge, and WEINER and GORBEY, District Judges.

WEINER, District Judge.

This is an action brought by several railroad companies to set aside an order of the Interstate Commerce Commission (I.C.C.) cancelling proposed rate sched-ules which would have provided increased revenues from the transportation of fresh fruit and vegetables to the east coast. Jurisdiction of this court was invoked pursuant to 28 U.S.C. § 1336(a) and a three-judge court was convened as required by 28 U.S.C. § 2325. Numerous shippers and growers have joined this action as intervening defendants.

Briefly summarized, the facts are as follows. In May, 1974, the railroads filed a series of tariffs and rate schedules with the I.C.C., which tariffs were to replace then-existing tariffs covering the transportation of perishable food products. Subsequently, protests were lodged by shippers and receivers, and the newly-filed tariffs were suspended and hearings begun pursuant to 49 U.S. C. § 15(7). The hearings constituted Investigation and Suspension Docket No. 8944, *Fresh Fruits and Vegetables, Trans-Continental and Western Points.* Hearings were held across the country at various places and at times until December 20, 1974. On December 20, the presiding administrative law judge set February 3, 1975 as the date by the which briefs were to be submitted by the interested parties.

On December 30, 1974, the date on which the seven-months period of suspension of rates under investigation was to end, the Full Commission issued an order cancelling the rates, effective thirty days later. As the railroads had not voluntarily agreed to prolong the suspension,[1] adherence to the previously-set briefing schedule would have resulted in the new tariffs being effective until the I.C.C. rendered its decision. The I.C.C. order indicated that the Commission had dispensed with the necessity of issuing an initial decision because of the need for a timely final decision and the I.C.C. had found that the filing of

---

1. A number of the shippers unsuccessfully petitioned the I.C.C. to strike the new rates prior to the expiration of the period of suspension. The I.C.C. supported a motion by the shippers to obtain a temporary restraining order against the implementation of certain new rates by the railroads. This motion was denied by the United States District Court in Chicago on December 30, 1974. *Blue Chip Inc. v. Western Trunk Line Committee, et al.*, No. 74C 3758 (N.D. Ill.1974).

briefs was, in light of their findings "not necessary for a proper disposition of [the] proceeding." A report was issued on March 14, 1975, which fully explained the basis for the December 30, order.

The railroads came before this court seeking a temporary restraining order to prohibit the Defendants ". . . from enforcing by any manner or means the order of the Interstate Commerce Commission entered . . . on December 30, 1974." Their request was denied on January 27, 1975. The matter is now before the court for final determination.

In their briefs, the railroads have presented several reasons why the I.C.C. order should be set aside. Their principal contention is that the failure to allow them to submit briefs violated the Administrative Procedure Act (A.P.A.), 5 U.S.C. § 551 *et seq.*, and violated their right to due process of law under the Fifth Amendment. Plaintiffs argue that under § 557(c) of the A.P.A., the I.C.C. was required to allow the parties to submit briefs and arguments. Specifically, § 557(c) provides:

> Before a recommended, initial, or tentative decision, or a decision on agency review of the decision of subordinate employees, the parties are entitled to a reasonable opportunity to submit for the consideration of the employees participating in the decisions—
>
> (1) proposed findings and conclusions, or
>
> (2) exceptions to the decisions or recommended decisions of subordinate employees or to tentative agency decisions; and
>
> (3) supporting reasons for the exceptions or proposed findings.

Defendants' briefs state that the hearings conducted by the I.C.C. provided plaintiffs with ample opportunity to present their position and, in fact, plaintiffs did fully present their position through their exhibits. Defendants also argue that the thirty day period before the December 30 order was to be effective afforded plaintiffs the opportunity to submit proposed findings and supporting reasons in the form of a motion for reconsideration.[2] The United States and the I.C.C. further state that the more rigorous standards of § 557 are not applicable, but, rather, that § 553 of the A.P.A. governs investigation and suspension proceedings.

Section 553 applies generally to rule making proceedings and provides:

> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

The government contends that § 15(7) of the Interstate Commerce Act requires only that decisions in investigation and suspension proceedings be made after "full hearing" (49 U.S.C. § 15(7)), and that the requirement has been satisfied.

It is clear that, if § 553 applies to the I.C.C. proceedings and not § 557, the hearings held by the I.C.C. would satisfy all statutory requirements. However, the issue raised by the parties is whether this proceeding was one in which rules were required to be made *"on the record* after opportunity for an agency hearing" (5 U.S.C. § 553(c), emphasis added). Plaintiffs claim that under 49 U.S.C. § 14(1), findings and conclusions

2. Plaintiffs did, in fact, file a motion for reconsideration. However, that motion was not directed at the merits of the I.C.C. find- ings, but rather was directed at the procedural claims raised here.

must be made in a more specific form than they were made by the I.C.C., because, they contend that § 557 of the A.P.A. governs rate-making by the I.C.C.

 There is support for the government's contention that these proceedings are governed by § 553 of the A.P.A. and that § 557 is not applicable here.[3] However, it is not necessary for us to decide this question. Even if we assume that § 557 applies, the proceedings before the I.C.C. meet the statutory requirements of the A.P.A.

Section 557(b) provides:

When the agency makes the decision without having presided at the reception of the evidence, the presiding employee or an employee qualified to preside at hearings pursuant to section 556 of this title shall first recommend a decision, except that in rule making or determining applications for initial licenses—

(2) this procedure may be omitted in a case which the agency finds on the record that due and timely execution of its functions imperatively and unavoidably so requires.

The Administrative Law Judge had set February 3, 1975 as the date by which briefs were to be submitted by the parties. However, under the above-quoted portion of § 557(b), it was imperative that the I.C.C. reach its decision by December 30, 1974, the date on which the seven-months suspension period ended. The I.C.C. did so by order dated December 30, 1974 and subsequently, on March 14, 1975, issued its full opinion. It is uncontested that all parties were well aware of the fact that the I.C.C. would have to act by December 30, 1974, if the published rates were to be suspended.[4]

 Plaintiffs have objected to the fact that an initial order was entered on December 30, 1974, and that the full decision of the I.C.C. was not entered until March 14, 1975, thereby depriving them of information necessary to prepare revised tariffs for submission to the I.C.C. However, during that interim period, plaintiffs did, in fact, file a petition with the I.C.C. This petition to vacate the I.C.C. order was in the format of a brief and contained arguments regarding the proposed rates. It would seem that the I.C.C. afforded plaintiffs every reasonable opportunity to be heard, and certainly the record amassed in the proceedings of 5,636 pages of transcript and 200 exhibits attests to that fact. The full opinion of the I.C.C. consists of 25 pages of text and 43 pages of Appendices, and it seems clear that the statutory requirements of the A.P.A., even under § 557(c) of . . . "findings and conclusions and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . ." have been met. Plaintiffs also contend that 49 U.S.C. § 14(1) requires that findings and conclusions be in a more specific form than they were before the I.C.C. That Section requires only that the report of the Commission state its conclusions, together with its decision and order. And, under 49 U.S.C. § 15(7) which governs rate suspension proceedings, the Commission is required:

. . . after full hearing, whether completed before or after the rate

3. In *Students Challenging Regulatory Agency Procedures (S.C.R.A.P.) v. United States,* 371 F.Supp. 1291 (D.D.C.1974), it was stated:

Rate-making, involving basically legislative-type judgments, is a form of rule-making which is governed by Section 553, rather than Sections 556 or 557, of the A.P.A. Id. at 1306.

*Cf. Aberdeen & Rockfish RR. Co., et al. v. SCRAP,* 422 U.S. 289, 95 S.Ct. 2336, 45 L. Ed.2d 191; *Virgin Islands Hotel Ass'n v.*

*Virgin Islands W. & P. Authy.,* 476 F.2d 1263, 1268–69 (3d Cir. 1973).

4. In fact, many of the shippers filed petitions with the I.C.C. prior to December 30, 1974, to secure suspension of the rates. Although all of the petitions except one, that of Bud Antle, had been denied, the Antle petition was apparently still pending when the suspension order of December 30 was entered.

. . . . . goes into effect, the Commission may make such order with reference thereto as would be proper in a proceeding initiated after it had become effective.

The record evidences the fact that a full hearing was afforded the parties. In *Alabama G. S. R. Co. v. United States,* 340 U.S. 216, 227–228, 71 S.Ct. 264, 95 L.Ed. 225 (1950) the Supreme Court stated that § 14(1) does not require detailed findings of fact, but rather only the essential basis of the Commission's judgment. And in *Kenny v. United States,* 103 F.Supp. 971 (D.N.J.1952), the court held that § 15(7) of the Interstate Commerce Act requires:

. . that the interested parties, both the carrier and protestants, shall be afforded an adequate opportunity to be heard on the merits of the controversy; nothing more would seem to be required. Id. at 977.

■ There has, likewise, been no failure to afford plaintiffs due process of law in accordance with the requirements of the Fifth Amendment to the Constitution of the United States. The parties were, as the record shows, accorded a full and fair hearing and, the Commission acted speedily in issuing its December 30 order because it was apparently concerned that allowing the new rates to go into effect for any length of time would significantly disrupt the produce traffic.[5] Thereafter on March 14, 1975, the full opinion of the I.C.C. issued. Under 49 U.S.C. § 15(2), orders of the I.C.C. regarding rates are to take effect not less than 30 days after their issuance. Therefore, had the Commission not acted with regard for the potential disruptive effect of the new rates, and issued only its final opinion on March 14, 1975, the rates could not have been suspended until April 14, 1975, and would have been effective for three and one-

half months, clearly an undesirable result.

■ We find the contention of plaintiffs that refunds are not appropriate in this situation to be without merit. Section 15(7) of the Interstate Commerce Act, states:

. . . upon completion of the hearing and decision [the Commission] may by further order require the interested carrier or carriers to refund, with interest, to the persons in whose behalf such amounts were paid, such portions of such increased rates or charges as by its decision shall be found not justified.

Section 15(7) further provides that the burden of proving proposed new rates to be just and reasonable is on the carrier. Therefore, it is altogether reasonable for the I.C.C., after finding that the requested rates are not just and reasonable, to order the carrier to refund any monies collected as part of the increased rates under investigation. Plaintiffs, in briefs, use the word "reparations", which appears in § 13(1) of the Interstate Commerce Act, a section dealing with complaints to and investigations by the Commission of violations of law by carriers. This matter is concerned with § 15 of the Act, and, more specifically, § 15(7) which section deals not with rates which are in use by carriers, but rather with proposed new rates. Here, the Commission's Order which found the rates not to be just and reasonable was issued December 30, 1974, prior to the expiration of the seven-months suspension period. It is within the Commission's power to further order that any charges paid pursuant to the new rates be refunded, with interest.

For the foregoing reasons, judgment will be entered for the defendants by separate order also dismissing the Complaint and affirming the December 30, 1974, order of the Interstate Commerce Commission.

5. There was evidence submitted by suppliers that in fact the produce traffic was severely disrupted during the 30 day period before the effective date of the I.C.C. order.