**HUMBOLDT EXPRESS, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Robert L. Curtis and Southern Forwarding Co., Intervenors.**

**No. 76–1972.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 17, 1977.

Decided Dec. 16, 1977.

---

3. *See* note 1 *supra.*

Henry E. Seaton, Washington, D. C., with whom Walter Harwood, Nashville, Tenn., was on the brief, for petitioners.

Jeffrey A. Knoll, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel, Peter A. Fitzpatrick, Asst. Gen. Counsel, I. C. C., Washington, D. C., and Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondents. James F. Ponsoldt, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for respondent, United States of America.

James N. Clay, III, Memphis, Tenn., for intervenors.

Before TAMM and MacKINNON, Circuit Judges, and HOWARD T. MARKEY,[*] Chief Judge, United States Court of Customs and Patent Appeals.

Opinion PER CURIAM.

PER CURIAM:

Pursuant to a certificate of public convenience and necessity issued by the Interstate Commerce Commission on April 26, 1963, Southern Forwarding Co. ("Southern") is authorized to conduct motor vehicle common carrier transportation services over a described regular route between Memphis, Tennessee and Louisville, Kentucky (J.A. 14). This certificate, referred to as the "lead" certificate, restricts Southern's authorization to provide service at Nashville to northbound traffic only; hence, Southern cannot provide service from Nashville to southbound (or westbound) points, such as Memphis, pursuant to the lead certificate's authorization. *See Southern Forwarding Co., Extension—Bowling Green and Elimination of Restrictions,* 110 M.C.C. 66 (1969).

Thereafter, as authorized by section 5 of the Interstate Commerce Act, 49 U.S.C. § 5 (1970),[1] Southern acquired the rights of

---

[*] Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. Section 5 of the Interstate Commerce Act (49 U.S.C. § 5 (1970)) is the general provision gov-

Portland Express, Inc. to serve intermediate points between Nashville and Mitchellville, Tennessee (J.A. 13). This acquisition permitted Southern to avoid the Nashville restriction in its lead certificate by joining its two certificates at a point of common service north of Nashville.

After Southern acquired its 1963 certificate and the Portland Express rights, it sought and obtained approval from the Commission to transfer a portion of its operating rights to Curtis Transports, Inc. ("Curtis") under the authority of § 212(b) of the Act (49 U.S.C. § 312(b) (1970)) [2] and the regulations thereto (49 C.F.R. Part 1132).[3] Specifically, Southern sought and received approval of the transfer of its intermediate point service on its route between Nashville and Memphis while retaining its direct, non-stop service between those cities (J.A. 104). Petitioners seek review not only of this order but also of subsequent Commission orders denying a petition for reconsideration (J.A. 202) and a petition for stay (J.A. 210).

The Commission's December 12, 1975 order approving the transfer application is brief and perfunctory (J.A. 104). Except for a reference to the National Environmental Policy Act of 1969 (J.A. 105), the sum total of the Commission's findings are contained in one paragraph:

> *It appearing,* That the transfer of the said operating rights complies with the Rules and Regulations Governing Trans-

fers of Rights to Operate as a Motor Carrier in Interstate or Foreign Commerce, including Section 1132.3 thereof, and is not subject to Section 5 of the Act; and that the proposed substitute transferee is fit, willing, and able properly to perform the service authorized and to conform to the provisions of the Act and the requirements, rules, and regulations prescribed thereunder . . . .

In essence, these findings replicate the language contained in 49 C.F.R. § 1132.3, which is a brief paragraph in the Transfer Rules listing "[g]eneral bases for approval" of a transfer application.[4] Like the December 12, 1975 order, the orders denying petitions for reconsideration (J.A. 202) and stay (J.A. 210) are brief.

▉ It is not disputed that the purpose of § 212(b) is to facilitate quick, uncomplicated transfer of certificates in proper cases. There is no requirement that the Commission hold a hearing, nor is there a need for comprehensive findings in every case. *Cargo Express, Inc. v. United States,* 345 F.Supp. 577, 579–80 (N.D. Ohio 1972); *Bradley v. United States,* 322 F.Supp. 369, 371–72 (D. Alaska 1971); *Monumental Motor Tours, Inc. v. United States,* 316 F.Supp. 663, 666–67 (D.Md.1970). The statute reflects the intent of Congress to accord substantial discretion to the Commission in such matters. Yet in giving the Commission authority to transfer certificates in an expedited manner, Congress certainly contemplated a lawful exercise of that discre-

---

erning combination and consolidation of carriers.

**2.** Section 212(b) of the Act provides:

> Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe.

49 U.S.C. § 312(b) (1970).

**3.** By the authority accorded it in § 212(b) of the Act, the Commission has prescribed comprehensive regulations for the transfer of operating rights. These regulations, *inter alia,* designate the method for applying for such transfers, authorize the transfer of rights on a temporary basis, prescribe procedures, list the various bases for disapproval, and prescribe standards for operations by fiduciaries. 49 C.F.R. Part 1132 (1976). Relevant portions of the

regulations are reprinted at notes 4, 6, 7, and 8, *infra.*

**4.** This regulation provides as follows:

> Except as may be otherwise provided in this part, the proposed transfer described in any such application shall be approved if it is shown that the proposed transaction is not subject to the provisions of section 5 of the Interstate Commerce Act; and that the proposed transferee is fit, willing, and able properly to perform the service authorized by the operating rights sought to be transferred, and to conform to the provisions of the Interstate Commerce Act and the requirements, rules, and regulations of the Commission thereunder. Otherwise, the application shall be denied.

49 C.F.R. § 1132.3 (1976).

tion. "Agency action which is arbitrary and capricious abuses discretion and constitutes an unlawful exercise of discretion." *Bell Lines, Inc. v. United States,* 306 F.Supp. 209, 213 (S.D.W.Va.1969), *aff'd per curiam,* 397 U.S. 818, 90 S.Ct. 1517, 25 L.Ed.2d 804 (1970). That this court has the responsibility to review Commission actions is beyond doubt. Upon complaint that the Commission has abused its discretion, we must carefully evaluate the allegations and we must reject agency actions that fall without the zone of the permissible discretionary function.

However, if this court is to evaluate the propriety of an agency's actions, we must be able to discern in the record the basis for its actions. As stated by the Supreme Court in *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade,* 412 U.S. 800, 805–07, 93 S.Ct. 2367, 2374, 37 L.Ed.2d 350 (1973),

> A reviewing court must be able to discern in the Commission's actions the policy it is now pursuing so that it may complete the task of judicial review . . . [A] simple examination of the order being reviewed is frequently insufficient to reveal the policies that the Commission is pursuing. Thus, this Court has relied on the "simple but fundamental rule of administrative law," *SEC v. Chenery Corp.,* 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995] (1947), that the agency must set forth clearly the grounds on which it acted. For "[w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong." *United States v. Chicago, M., St. P. & P. R. Co.,* 294 U.S. 499, 511 [55 S.Ct. 462, 467, 79 L.Ed. 1023] (1935).

This principle has been the foundation of the analysis of courts on many occasions. *E. g., Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Monumental Motor Tours, Inc. v. United States, supra,* at 668–70; *Central & Southern Motor Freight Tariff Ass'n v. United States,* 273 F.Supp. 823, 834 (D.Del.1967); *Chesapeake Motor Lines v. United States,* 153 F.Supp. 812, 815–16 (D.Md.1957).

In this case, petitioners advance several arguments which call into question the basis of the Commission's actions.[5] The Commission's orders do not reveal whether the agency considered these arguments; if the Commission did in fact consider them, the orders do not reveal the reasons they were rejected. We cannot say that petitioners' questions are so frivolous or so lacking in substance as to permit the Commission to treat them in a perfunctory manner. The inadequate explanation accorded this particular administrative action gives us no opportunity for an intelligent review. Instead, this court is left with a dilemma: we could uncritically approve the agency action, which would amount to a failure to perform properly the duty of a reviewing court. On the other hand, we could search out this matter on our own, which would very probably result in the substitution of a judicial judgment for an administrative judgment. This dilemma can be avoided only if agencies provide an adequate explanation of the basis for the actions which they take. *Chesapeake Motor Lines v. United States, supra,* at 815–16. While we are mindful of the expertise and experience of the Commission, and while we recognize the need to accord the Commission considerable discretion in transfer applications, we conclude that the agency in this case has not adequately explained the basis for its action.

Specifically, we point to several issues which the Commission on remand must consider: (1) *the extent of the duplication.* Petitioner contends that approval of the

---

5. In addition to challenging the December 12, 1975 Commission order, petitioners challenge the orders denying their petitions for reconsideration and stay. These last two orders are not of particular concern to us here. Our difficulty is that the Commission in the *first* order failed to state its reason for the applicabiity or non-

applicability of its own regulations and to answer questions implicating the authority of the Commission to proceed under § 212(b). Had the first order explained adequately the basis for the Commission's action, the petitions for reconsideration and stay would have arisen in a wholly different context.

transfer of rights from Southern to Curtis results in the duplication of rights within the Nashville and Memphis commercial zones (Pet.Br. 23–28). Respondents concede that some duplication does occur (Res.Br. 13). The Commission's own transfer rules forbid duplicating rights, 49 C.F.R. §§ 1132.5(a)(1), 1132.1(c).[6] It is the responsibility of the Commission to explain why the language of its own rules does not apply in this case. Counsel for respondents have offered an ingress/egress theory for the non-application of the rule, but the record does not indicate whether this was the reason for the Commission's decision. Indeed, at oral argument, it was apparent that the degree of circuity was a subject of much dispute; the resolution of this matter would seem to be crucial not only to the ingress/egress theory but also to the determination of the extent of the creation of new rights discussed below. This matter is most appropriately left to the Commission on remand. (2) *division of operating rights.* Nothing in the record explains why the Commission's rules against splitting rights, 49 C.F.R. § 1132.5(a)(2)[7] does not apply in this case. More troublesome is 49 C.F.R. § 1132.5(a)(4),[8] which forbids separating intermediate points from the routes or routes to which they are appurtenant. These regulations are clearly relevant to this transfer application, but the Commission has not stated any reason why they are or are not applicable. (3) *creation of rights.* In gaining the right to proceed directly south (or west) out of Nashville, Curtis obtained a right not contained solely in Southern's lead certificate or in its subsequently acquired certificate. Because the tacking of these two certificates allowed traffic to proceed south (or west) only by pursuing a circuitous route as described above, it would appear that Curtis received a right which did not previously exist. Counsel for respondents assert that nothing was transferred which Southern did not own, and that at best only a "technical" new right was created. The Commission's orders do not address this issue, which implicates the propriety of the Commission's willingness to proceed under § 212(b). If the creation of this new right is only technical—or even if no new right is created, it is the responsibility of the Commission to explain it. This is an appropriate subject of the remand.

■ Nothing in our opinion should be construed as directing the Commission to

---

**6.** 49 C.F.R. § 1132.5(a)(1) (1976) states:

> (a) *Division of rights.* An application for transfer of part of an operating right as to routes or commodities will be denied if it is found that the partition (1) would create duplicating rights as defined in § 1132.1(c): *Provided,* That transfer of regular-route authority to operate between the same points, but over different highways, as is authorized by other operating rights of the transferor not embraced within the application, may be approved upon a satisfactory showing that the transaction will not result in the performance of substantially competitive or duplicative services.

49 C.F.R. § 1132.1(c) (1976) defines "duplicating rights" as follows:

> (c) *Duplicating rights.* Operating rights which authorize the transportation of passengers, or of the same commodities, from and to, or between the same points.

**7.** This regulation provides as follows:

> (a) *Division of rights.* An application for transfer of part of an operating right as to routes or commodities will be denied if it is found that the partition . . . (2) would divide the rights at a point other than along clearly defined geographical or political lines,

or permit the minute and multiple division of operating rights so that numerous carriers might ultimately operate under rights initially granted as a unit, or would permit the division of radial, irregular-route operating rights, in such a way that the respective parts would be held by two or more carriers under common control.

49 C.F.R. § 1132.5(a)(2) (1976).

**8.** This regulation provides as follows:

> (a) *Division of rights.* An application for transfer of part of an operating right as to routes or commodities will be denied if it is found that the partition . . . (4) would separate an alternate route or routes, an intermediate point or points, or an off-route point or points, from the route or routes to which it or they are appurtenant. In construing subparagraphs (2) and (3) of this paragraph, the nature of divisions proposed in other applications for transfers of operating authority filed on behalf of the holder, and the action taken thereon, will be considered in passing upon the current application.

49 C.F.R. § 1132.5(a)(4) (1976).

reach any particular result. Our present difficulty is that the Commission has failed to state its reasons for reaching the result it considered correct. The Commission in a transfer proceeding is required to give reasons for its action if the protestants raise a material disputed issue or if the existence of a material issue is apparent from the proceedings. If a material issue is not so presented, then the Commission is not required to explain its action with such findings. "[T]he basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented." *Alabama Great Southern Railroad Co. v. United States,* 340 U.S. 216, 228, [71 S.Ct. 264, 272, 95 L.Ed. 225] (1951). *Accord, Minneapolis & St. Louis Ry. Co. v. United States,* 361 U.S. 173, 193–94 [, 80 S.Ct. 229, 4 L.Ed.2d 223] (1959). Thus, in some other factual context, further findings might not have been needed; here, however, petitioners' contentions have broad implications.

Accordingly, we vacate the orders of the Commission, and remand the case so that the Commission might state clearly and precisely its reasons for approving (or not approving) the Southern Forwarding transfer application. Upon remand, the Commission is directed to address itself to the questions raised by petitioners to which we refer above.[9] This should not prevent the Commission from considering other issues which it might consider relevant to the application.

*So ordered.*

---

**9.** The Commission need not, unless it desires to do so in an exercise of its discretion, hold a hearing. It should be noted that we do not hold that a § 207 (49 U.S.C. § 307 (1970)) proceeding is necessary on remand. Rather, it is contemplated that on remand the Commission will provide findings which demonstrate that this application is properly the subject of a § 212(b) proceeding, or that the Commission will instead invoke § 207 or other procedures appropriate for this situation.