**ALGONQUIN LNG, INC. and Algonquin Gas Transmission Company, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 76–2157.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1977.

Decided Jan. 26, 1978.

John T. Ketcham, Washington, D. C., with whom Charles E. McGee, Francis J. McShalley and Phil W. Jordan, Washington, D. C., were on the brief for Algonquin LNG, Inc.

John J. Lahey, Atty., Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., Washington, D. C., were on the brief for the Federal Energy Regulatory Commission.

Before TAMM and ROBB, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by MARKEY, Chief Judge.

* Sitting by designation pursuant to Title 28, U.S.C. § 293(a).

MARKEY, Chief Judge:

Appeal from Orders of the Federal Power Commission (now the Federal Energy Regulatory Commission) in *Algonquin LNG, Inc.*, Docket No. CP75–14, affirming and adopting a Hearing Examiner's decision requiring refunds of amounts collected in excess of a rate of $3.45 per barrel, and denying rehearing. We vacate the Orders and remand.

## BACKGROUND

Algonquin, LNG, Inc. (Algonquin), a wholly-owned subsidiary of Algonquin Gas Transmission Co., owns and operates a 600,-000 barrel liquified natural gas (LNG) storage tank. On July 14, 1974, Algonquin filed with the Federal Power Commission (Commission) an application for a limited term certificate of public convenience and necessity under § 7 of the Natural Gas Act, as amended, 15 U.S.C. § 717f,[1] to store approximately 426,000 barrels of LNG[2] at $4.50 per barrel. The application included a "summary cost of service" and described that cost as "the derivation of the proposed rate."

An order granting the certificate issued September 12, 1974. The certificate was set to expire May 1, 1975, was conditioned on a satisfactory showing that the $4.50 rate was in the public interest, and provided for a later formal hearing on that question.

The formal hearing was held October 29, 1974. Algonquin submitted the testimony of Teel, a consultant specializing in rate proceedings, and Jaques, vice president of Algonquin, and two exhibits. Counsel for the Commission cross-examined Teel and Jaques, but offered no evidence.

The initial decision of the Hearing Examiner issued February 28, 1975. The Commission order issued August 17, 1976, three months after termination of the storage service. Rehearing was denied on December 27, 1976.

## ALGONQUIN'S ARGUMENTS

Algonquin contends: (1) the Commission lacks statutory authority to impose a confiscatory rate; (2) the Commission's opinion lacks a finding of public convenience and necessity; (3) the Commission's findings are contrary to the record; and (4) Algonquin was not accorded a fair hearing.

With respect to (1) Algonquin argues: (a) the $3.45 rate is below cost; (b) a below-cost rate is unjust, unreasonable and confiscatory; and (c) a confiscatory rate is contrary to the requirement of § 7(e) that all conditions be "reasonable."

With respect to (2), Algonquin argues that there is no explanation of why the public convenience and necessity requires:

---

1. 15 U.S.C. § 717f. Construction, extension, or abandonment of facilities; certificate of convenience and necessity; condemnation proceedings.

* * * *

(c) No natural-gas company . . . shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, . . . unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . . .

. . . [T]he Commission shall set the matter for hearing . . . and the application shall be decided in accordance with the procedure provided in subsection (e) of this section and such certificate shall be issued or denied accordingly: *Provided, however*, That the Commission may issue a temporary certificate in cases of emergency, . . .

pending the determination of an application for a certificate, and may by regulation exempt from the requirements of this section temporary acts or operations for which the issuance of a certificate will not be required in the public interest.

* * * *

(e) . . . [A] certificate shall be issued to any qualified applicant therefor, . . . if it is found . . . that the proposed service . . . is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate . . . such reasonable terms and conditions as the public convenience and necessity may require. . . .

2. 174,000 barrels were dedicated to storage outside Commission jurisdiction.

(a) the $3.45 rate; (b) employment of the method by which that rate was derived; and (c) that Algonquin be denied recovery of its costs.

With respect to (3), the record, Algonquin argues: (a) the Commission's evaluation of the $4.50 rate was contrary to the record in that the Commission used a "formula" it found in the application, when the evidence showed that $4.50 was a below-cost rate established solely on competitive considerations; and (b) the Commission calculated its $3.45 rate in a manner contrary to the record in that: (i) it employed a limited cost test it found in the application, but substituted different cost figures from Exhibit 1; (ii) it "justified" the calculation as derived from the "same method" as the application; (iii) its substitution of interest figures from Exhibit 1 was improper and contrary to the Uniform System of Accounts prescribed for natural gas companies; (iv) it erroneously assumed that Algonquin wished to recover "out-of-pocket" costs; (v) it ignored the record showing that even the $4.50 rate would not recover out-of-pocket costs; (vi) it excluded income taxes because they were not included in the application; (vii) it excluded income taxes because of an erroneous conclusion that there is no return in an out-of-pocket formula; (viii) it premised the $3.45 rate on sale of 600,000 barrels of storage space, when only 280,400 barrels were sold; and (ix) its own finding of out-of-pocket costs would not be met by a $3.45 rate, the unit cost per barrel being established in the record as $7.39.

With respect to (4), unfair hearing, Algonquin argues: (a) the application was not in evidence; (b) yet, without explanation or notice, it was bound by its application formula, in violation of Commission Rule 1.11(b), 18 C.F.R. § 1.11(b); and (c) the theory for reducing the $4.50 rate was first formally proposed in the Commission Staff's post-hearing brief.

## THE COMMISSION'S ARGUMENTS

The Commission contends: (1) the "just and reasonable" standard of §§ 4 and 5, 15

U.S.C. §§ 717c and d, does not apply to § 7; (2) the $4.50 rate was not in the public convenience and necessity; and (3) the refund order was proper.

With respect to (1), the Commission argues: (a) its duty is to hold initial rates to levels consistent with the public convenience and necessity pending determination in a future § 4 hearing that the rate is just and reasonable; (b) the Commission is not required by § 7 to find the initial rate just and reasonable; and (c) Algonquin's rate was not shown to be required by public convenience and necessity.

With respect to (2), the Commission argues: (a) Algonquin's "confiscatory" argument is an attempt to transfer the burden of proof; (b) Algonquin's application involved a proposal to recover out-of-pocket expenses; (c) because Algonquin chose an out-of-pocket formula, it cannot include cost-of-service items, such as income taxes; (d) Algonquin departed at the hearing from the method of rate derivation in its application, without reasonable explanation or support; (e) the Commission used the sale of 600,000 barrels in calculating the rate because Algonquin used that figure in its application formula; and (f) the figures in Algonquin's Exhibit 1 support the $3.45 rate.

With respect to (3), the Commission argues that Algonquin, having been on notice that a refund was possible and having accepted a refund-conditioned certificate, cannot argue that a refund is improper.

The Commission has not denied that its $3.45 rate is confiscatory; nor has it explained why the $3.45 rate is required by public convenience and necessity; nor has it responded to Algonquin's contention that it was deprived of a fair hearing; nor has it argued that the $3.45 rate is adequate to meet Algonquin's out-of-pocket costs.

## ISSUE

The issue is whether the decision of the Commission is supported by substantial evidence.

## OPINION

Section 7(c) of the Natural Gas Act requires that no transaction within the juris-

diction of the Commission be undertaken without a certificate of public convenience and necessity. Section 7(e) gives the Commission the power to attach "such *reasonable* terms and conditions as the public convenience and necessity may require." (Emphasis added.)

Under § 4(a), all rates received by a natural gas company must be just and reasonable, and under § 4(d), a company can change its rate by filing a new rate schedule. Under § 4(e), the Commission can initiate a hearing at which the company must prove the new rate just and reasonable.[3] Under § 5(a), whenever the Commission determines, after hearing, that a rate is unjust or unreasonable, the Commission can determine a new, just, and reasonable rate to be charged.[4] Proceedings under §§ 4 and 5 are predicated on the continuing nature of the regulated transaction.

Normally, issuance of a § 7 certificate is followed by proceedings under either § 4 or § 5. In the present case, the Commission order issued post-hoc, i. e., after termination of the storage service, and related only to a past rate. There is thus no occasion or opportunity for a § 4 hearing. The present Commission proceeding is therefore a type of hybrid, creating a case of first judicial impression.

### THE PUBLIC INTEREST

Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r, requires affirmance of the Commission's order if its findings of fact are supported by substantial evidence. As this court said recently in *Humboldt Express Inc., et al. v. Interstate Commerce Commission*, 186 U.S.App.D.C., 141, 567 F.2d 1134 (1977), "if this court is to evaluate the propriety of an agency's actions, we must be able to discern in the record the basis for its actions." 186 U.S.App.D.C. at 144, 567 F.2d at 1137. The Commission's only reference to public convenience and necessity consists of four sentences:

> Algonquin LNG has failed to show why the formula used in the application is now inappropriate. Furthermore, it is clear that Algonquin LNG has supplied the record evidence to support the $3.45 rate by its testimony and exhibits. We find that the $3.45 per barrel rate is reasonable and in the public interest; therefore, it is required by the public convenience and necessity.

We find no basis in the record for support of those conclusory statements.

The Commission treats the $3.45 rate as being in the nature of a condition attached to issuance of a § 7 certificate like that described in *Atlantic Refining Co. v. Public Service Comm. (CATCO)*, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). The Commission's authority to set initial rates in § 7 proceedings was confirmed in that case, where it was said that attaching a condition was:

> [T]he exercise of that duty imposed on the Commission to protect the public in-

---

**3.** 15 U.S.C. § 717c. Rates and charges; schedules; suspension of new rates.
(a) All rates . . . shall be just and reasonable . . . ..

\* \* \* \*

(d) . . . [N]o change shall be made . . . in any such rate . . . except after thirty days' notice to the Commission and to the public. . . .
(e) Whenever any such new schedule is filed the Commission shall have authority . . . upon its own initiative . . . to enter upon a hearing concerning the lawfulness of such rate . . . .. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the in-

creased rate or charge is just and reasonable shall be upon the natural-gas company . . . ..

**4.** 15 U.S.C. § 717d. Fixing rates and charges; determination of cost of production or transportation.
(a) Whenever the Commission, after a hearing . . . shall find that any rate . . . is unjust, unreasonable . . . the Commission shall determine the just and reasonable rate, . . . to be thereafter observed and in force . . . .. [T]he Commission may order a decrease where existing rates are unjust . . . or are not the lowest reasonable rates.

\* \* \* \*

terest in determining whether the issuance of the certificate is required by the public convenience and necessity. . . . In granting such conditional certificates, the Commission does not determine initial prices nor does it overturn those agreed upon by the parties. Rather, it so conditions the certificate that the consuming public may be protected while the justness and reasonableness of the price fixed by the parties is being determined under other sections of the Act. . . .

*CATCO* at 392, 79 S.Ct. at 1255. *CATCO* and subsequent cases have involved natural gas producers and continuing production operations, where the hearings provided for in §§ 4 and 5 will occur in due course. *United Gas Improvement Co. v. Callery Properties,* 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965), *rehearing denied,* 382 U.S. 1001, 86 S.Ct. 526, 15 L.Ed.2d 491 (1966).

The present case, involving temporary storage rather than continuing production, differs markedly from *CATCO.* The Natural Gas Act does not contemplate a situation involving termination of a certificated service before a just and reasonable rate is determined under § 4 or § 5, except under such circumstances as may be exempt by regulation under § 7(c).[5] Yet the Commission has not explained how *CATCO* authorizes its conditioning of the certificate here, where the circumstances are so clearly distinct from those on which the right-to-condition rationale of *CATCO* was premised. Nor has it explained how the imposition of the condition satisfies the public interest.

## FAIRNESS

In all events, the procedure followed in these apparently unusual circumstances was inadequate to the Commission's announced task and was conducted in a manner unfair to Algonquin. The Order Scheduling Limited Formal Hearing stated that "there

must be a satisfactory showing that the proposed service rate of $4.50 per barrel . . . is in the public interest . . . [, the purpose of the hearing being] to determine what rate should be authorized as required by the public convenience and necessity. . . ." Algonquin offered evidence to show that its revenue from its storage service did not even offset allocable operating and interest costs, and that its $4.50 rate was therefore reasonable. Algonquin's application was neither offered nor received in evidence. The Commission presented no evidence.

Although Algonquin was on notice that its $4.50 rate was subject to reduction, and though rate-recalculation was suggested at the hearing, Algonquin was given no notice until *after* the hearing that Commission counsel proposed a $3.45 rate based on the application and substitution of some of the figures used at trial. Other than what might have been conjectured from the "drift" of the cross-examination of witness Teel, Algonquin had no knowledge of or opportunity to rebut the Commission's theory. Further, because neither the $3.45 rate nor its method of calculation was introduced by a Commission witness, Algonquin was deprived of the right of cross-examination.

Algonquin's witness Jaques testified that the $4.50 rate was dictated by competitive factors, and that the method used in the application "provided a result which was consistent with" that predetermined rate. Teel likewise testified that the figures appearing in the application were cited merely to illustrate the reasonableness of the rate.

Teel further testified that the $4.50 rate represented out-of-pocket expenses. Asked why, if out-of-pocket expenses were all Algonquin intended to recover, he did not recalculate the rate for the hearing, Teel replied that Algonquin had moved from the certificate filing "down into the so-called rate aspects." Algonquin's attorney added, on the question of recalculating the rate,

5. The parties have not discussed whether a temporary storage service, designed to meet the expected onslaught of extreme cold, could or should have been exempted.

"we understand the Commission order to tell us to justify the $4.50 rate; of course, that is what Mr. Teel's testimony is directed to, and his exhibit."

Although the Commission made no objection at the hearing to Algonquin's evidence, it later refused to give that evidence any weight, stating that Algonquin had departed from the method of rate derivation in its application without reasonable explanation or support.

Commission Rule 1.20(f), 18 C.F.R. § 1.20(f), provides in part:

> The applications (including attached exhibits) . . . upon which hearings are fixed shall, without further action, be considered as parts of the record as pleadings: *Provided, however,* That in no event . . . [except in circumstances not applicable here] shall such pleadings, or any part thereof, be considered as evidence of any fact other than that of the filing thereof *unless offered and received in evidence* in accordance with the Commission's rules. [Emphasis added.]

Commission Rule 1.11(b) provides in part:

> When, at a hearing, issues not raised by the pleadings are introduced by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings . . . .

The Commission's post-hearing use of the application for its substantive content, though it was not in evidence, thus violated Rule 1.20(f). The Commission cites no requirement that a method in an application must be adhered to and its requirement of "reasonable explanation or support" for Algonquin's evidence adduced at the hearing violated its own Rule 1.11(b). The Commission has not acknowledged those violations, much less explained them.

### THE RECORD

The $3.45 rate first arose during cross-examination of Teel. Commission counsel suggested that if the rate were recalculated, using the method of the application and substituting the more recent figures of Exhibit 1, the result would be $3.45. Teel replied that if he were recalculating the rate, he would "bring back" the interest figure of the application, because Commission counsel's figure represented a different concept and was inadequate for rate calculation. Teel's objection to Commission counsel's substitution of figures is not rebutted by any evidence in the record.

The Commission, in its Order Denying Rehearing, stated: "Since we have concluded from the exhibits and testimony of Algonquin that it was using an out-of-pocket formula to reach the proposed rate, only the debt portion can be included in determining the out-of-pocket cost."

The only evidence of record regarding the respective components of out-of-pocket and cost-of-service approaches is the uncontradicted testimony of Teel:

> The $4.50 per barrel rate was computed by taking estimates only of the operating expenses (including property taxes) and interest costs attributable to the LNG tank, and dividing the total amount by the capacity of the tank. The method should be distinguished sharply from the customary total cost of service basis where total cost of service includes a return component on rate base, related income taxes, and depreciation expense. The method utilized in computing the $4.50 rate reflected what may be identified as cash requirements, it included no allowance for depreciation expense or return to equity, or income taxes related to that return. Obviously, the $4.50 per barrel rate is significantly lower than would be obtained by the use of a customary full cost of service approach.

The interest costs attributable to the LNG tank, as Teel testified, included both debt and equity. The record before us contains no explanation of the propriety of the Commission's out-of-pocket expense approach in general, or of the propriety of its substitution of interest figures in particular.

The Commission stated in its Order Denying Rehearing: "This [the Commission's]

method, eliminating the equity portion, is completely consistent with an out-of-pocket expense approach and, furthermore, to allow Algonquin both the debt and equity components would result in a return on equity which is closer to a full cost of service approach. . . . The Company [Algonquin], Staff, the Law Judge and the Commission used an out-of-pocket approach in meeting the public convenience and necessity standards of Section 7. To argue cost of service standards now is inappropriate." The statement is indicative of the confusion attending the burden of proof in this case.

■ Nothing of record establishes that an out-of-pocket, a cost-of-service, or some other approach, is either more or less usable or effective in determining public convenience and necessity. Algonquin had the burden of showing that its proposed $4.50 rate was required by the public convenience and necessity. If dissatisfied with Algonquin's showing, the Commission was entitled to impose a rate found by it to be required by the public convenience and necessity. The burdens on Algonquin and on the Commission are independent. Hence, whether Algonquin had chosen an out-of-pocket, or cost-of-service approach, or an approach incorporating elements of both, in its application or at the hearing, is irrelevant.

An aura of unreality surrounds the Commission's calculation of a new rate based on the sale of 600,000 barrels, when only 280,400 barrels were actually sold.[6] The Commission says it used 600,000 barrels because it felt that Algonquin's proposed rate had

been based thereon. It made no determination that a formula based on a 600,000 barrel tank capacity was required by the public convenience and necessity.

Though the Commission says it would allow Algonquin "to recover that which it requested—that is, out-of-pocket expenses as originally proposed, adjusted to reflect more recent cost data of record," it made no finding that the $3.45 rate would allow Algonquin to recover its out-of-pocket expenses, adjusted or otherwise. On the contrary, the record supports Algonquin's allegation that the $3.45 rate yields considerably less than the expense figures used by the Commission itself in its calculation of the rate.

■ If there were independent grounds in the record to support the propriety of the $3.45 rate, the Commission's Order might be affirmed without specific findings that the Commission's formula was required by public convenience and necessity. There are no such independent grounds of record, and the decision of the Commission is not supported by substantial evidence.

## CONFISCATION

■ The Commission made no finding, and no argument here, that the $3.45 rate was not confiscatory. The Commission's contention that Algonquin's argument is an attempt to reverse the burden of proof described in § 7 is irrelevant.[7] The prohibition of confiscatory rates is constitutional. The Commission has no more power to act unconstitutionally in a § 7 proceeding than it has in a § 4 or § 5 proceeding, or in the

---

6. The application indicated sale of 391,000 barrels. Jaques testified that the difference was due largely to delay between filing of the application and authorization of the service. Commencement of service was pushed so far into autumn that the time for liquefaction and transportation of the gas was greatly shortened, and the companies purchasing the storage service "couldn't physically get the volume in." Though the application was merely for temporary storage during the approaching winter, and no hearing was held, the Commission took eight weeks to process it. Nonetheless, Commissioner Brooke, in a concurring state-

ment, praised the Commission for its expedition.

7. It is also incorrect. The burden of showing the $3.45 rate to be required by the public convenience and necessity is on the Commission. A contrary view would enable the Commission, dissatisfied with a regulatee's effort to carry its burden of showing that a proposed rate met the requirement, to act arbitrarily, choosing any rate it wished, without concern for the public convenience and necessity finding required by the statute, or for the confiscatory limitation required by the Constitution.

truncated proceeding followed here, or in any other.

Of equal concern to the administration of justice is the Commission's argument that its $3.45 rate need not be just and reasonable. It bases the argument on the labeling of the present proceeding as "under § 7," when it knows that no § 4 hearing, at which a just and reasonable rate might be set, and which normally follows a § 7 proceeding, is possible. But the constitutional requirement that the Commission refrain from the imposition of confiscatory rates is not limited to proceedings under those sections of the Natural Gas Act to which the "just and reasonable" standard applies. The Supreme Court, in the *Permian Basin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) *rehearing denied*, 392 U.S. 917, 88 S.Ct. 2050, 20 L.Ed.2d 1379 (1968), set forth the interrelationship: "the just and reasonable standard of the Natural Gas Act 'coincides' with the applicable constitutional standards, *FPC v. Natural Gas Pipeline Co., supra* [315 U.S. 575 (1942)], at 586, [62 S.Ct. 736, 86 L.Ed. 1037] and any rate selected by the Commission from the broad zone of reasonableness permitted by the Act cannot properly be attacked as confiscatory." *Permian Basin* at 770, 88 S.Ct. at 1361. That the Commission in a normal § 7 proceeding need not find the initial rate just and reasonable, *Federal Power Commission v. Hunt*, 376 U.S. 515, 84 S.Ct. 861, 11 L.Ed.2d 878 (1964), because a just and reasonable rate may be later found in a § 4 hearing, does not mean that the Commission may impose a rate unjust, unreasonable, and confiscatory where, as here, there can be no later determination of a rate just, reasonable and non-confiscatory.

## CONCLUSION

Applicable here are these words of the court in *Humboldt Express, supra* : "While we are mindful of the expertise and experience of the Commission, and while we recognize the need to accord the Commission considerable discretion . . ., we conclude that the agency in this case has not adequately explained the basis for its action." 186 U.S.App.D.C. at 144, 567 F.2d at 1137.

Beyond the absence of adequate explanation, the procedure followed by the Commission in this case involved unfair decisionmaking, in which the Commission's own rules were violated, and a failure to find on substantial evidence that the imposed rate was required by public convenience and necessity. The Commission's position on appeal entailed counsel's post-hoc attempt to justify what is in fact a final rate as though it were an initial rate free of any "just and reasonable" requirement, and a disregard of whether the imposed rate was confiscatory.

We decline, however, to substitute our judgment regarding a proper rate. The present record, in any event, is inadequate to support a decrease in the $4.50 rate. If the Commission continues to consider Algonquin's $4.50 rate unjust or not the lowest reasonable rate, we are confident that it can, in the unusual circumstances of this case, devise an appropriate procedure in which a just, reasonable and nonconfiscatory rate may be fairly determined. Accordingly, we set aside the Orders and remand the case to the Commission.

*So Ordered*