593 F.2d 691
 EAST TEXAS MOTOR FREIGHT LINES, INC. and Red Ball Motor Freight, Inc.,
Petitioners, Illinois-California Express, Inc., Sundance
Freight Lines, Inc., and O. N. C. Freight Systems,
Intervening-Petitioners,
v.
The UNITED STATES of America and the Interstate Commerce
Commission, Respondents,
Merchants Fast Motor Lines, Inc., Intervening-Respondent.
 No. 78-2448.
 United States Court of Appeals,
Fifth Circuit.
 April 23, 1979.
 
 Ralph W. Pulley, Jr., Dallas, Tex., for petitioners and intervening-petitioner Illinois-California Exp., Inc.
 John H. Shenefield, Asst. Atty. Gen., John J. Powers, III, Robert L. Thompson, Attys., Dept. of Justice, Mark L. Evans, Gen. Counsel, Frederick W. Read, III, Assoc. Gen. Counsel, Wayne M. Senville, L. Marie Guillory, Attys., I.C.C., Washington, D.C., for respondents.
 Bernard H. English, Fort Worth, Tex., Gerald J. Gallinghouse, New Orleans, La., Jerry Prestridge, Austin, Tex., Everett Hutchinson, Washington, D.C., for intervening-respondent.
 Petition for Review of an Order of the Interstate Commerce Commission.
 Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 This is an appeal from a decision by the Interstate Commerce Commission granting Merchants Fast Motor Lines (Merchants) temporary authority to carry commodities from Texas through New Mexico to Arizona.[1] A number of carriers,[2] protestants before the Commission, prosecute this appeal. They assert that the ICC proceedings did not comport with due process and that the decision was arbitrary, capricious, and without sufficient evidentiary support in the record. We affirm.
 
 I. The Administrative Process
 
 2
 Appellants received notice of Merchants' application for temporary authority through publication in the Federal Register, as required by law. They filed protests in opposition to the request; contrary to proper procedure, however, protestants were not given direct notice of the Motor Carrier Board's decision to grant the application. After hearing indirectly of the decision, appellants informed the ICC of this omission and filed motions for reconsideration. In response, the ICC extended the time period for administrative review, but subsequently denied the motions for reconsideration.
 
 
 3
 Appellants contend that the failure to notify them compels the conclusion that their protests were not considered by the Motor Carrier Board. The ICC has asserted that the protests were omitted through clerical error from the public docket, but that the protests were included in the personal files of the Board members and were considered in the deliberations. Since receipt of notice is keyed to filing in the public docket, the omission in this case explains the failure of notice concerning the Board's decision. Appellants, however, harbor the belief that the Board did not consider their protests, and that the ICC's official assertions to the contrary are fallacious.
 
 
 4
 Accepting the ICC's explanation,[3] we can perceive no due process violation in the present case. Inclusion in the public docket is crucial primarily to receipt of notice of a Board decision. Although appellants did not receive notice until two weeks after the Board decision, there does not appear to have been any prejudice arising from this delay since the ICC extended the time for administrative review. The procedural irregularity in this case is so minor and the explanation is so plausible, that we can discern no reason to vitiate the ICC's decision merely to vindicate appellants' grievances. Admittedly, procedural defaults may so taint administrative proceedings that remand would be necessary in order to preserve substantive rights and to protect the integrity of the administrative process. This case, however, does not present such egregious circumstances. Compare Barnes Freight Line, Inc. v. ICC, 569 F.2d 912 (5 Cir. 1978).[4]
 
 
 5
 Appellants also contend that the Board and the ICC should have issued decisions that fully explained their results. The Motor Carrier Board opinion was limited primarily to a reiteration of the statutory requirements for granting temporary authority and the ICC decision on reconsideration consisted of one sentence.
 
 
 6
 ICC proceedings on temporary authority applications need not comply with certain requirements of the Administrative Procedure Act, including the issuance of findings and conclusions.[5] Appellants, acknowledging this inapplicability of the APA, rely upon Humboldt Express, Inc. v. ICC, 186 U.S.App.D.C. 141, 567 F.2d 1134 (1977). In Humboldt, the D.C.Circuit remanded to the ICC, because, in order to provide for effective appellate review, the ICC had to explain the basis for its deviations from its regulations. According to the court,
 
 
 7
 The Commission in a transfer proceeding is required to give reasons for its action if the protestants raise a material disputed issue or if the existence of a material issue is apparent from the proceedings. If a material issue is not so presented, then the Commission is not required to explain its action with such findings. "(T)he basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented." Alabama Great Southern Railroad Co. v. United States, 340 U.S. 216, 228 (71 S.Ct. 264, 272, 95 L.Ed. 225) (1951). Accord, Minneapolis & St. Louis Ry. Co. v. United States, 361 U.S. 173, 193-94 (80 S.Ct. 229, 4 L.Ed.2d 223) (1959). Thus, in some other factual context, further findings might not have been needed; here, however, petitioners' contentions have broad implications.
 
 
 8
 186 U.S.App.D.C. 146, 567 F.2d 1139.
 
 
 9
 The ICC seeks to factually distinguish Humboldt because of the singular nature of temporary authority cases. The Commission asserts that temporary authority cases are more time sensitive than the transfer case involved in Humboldt, and that the ICC receives thirty-three times more temporary authority cases than transfer cases, amounting to 18,632 applications in 1978. The Commission argues that requiring a full explanation in each of these cases would effectively foreclose the availability of temporary authority.
 
 
 10
 The Commission's factual distinctions are unpersuasive. Appellants do not assert that a reasoned opinion is necessary in every temporary authority case, but only that in a case, such as this, involving an extensive grant of temporary authority over protests from a number of carriers,[6] the Commission should explain its results.[7] We fail to see how imposing such a requirement in an appropriate case would place an intolerable burden on the Commission, especially in light of the competing concern that any other result would effectively vitiate appellate review.
 
 
 11
 Accepting the Humboldt premise,[8] we still must decide whether a remand in the present case is necessary or appropriate. This decision is inextricably intertwined with the merits of this appeal; if, in applying the appropriate scope of review to the record and the law, a satisfactory evaluation of the decision can be achieved, a remand would be unnecessary and the result would be affirmance or reversal. Only if, after examination of the record and the law, the court were left without a clear understanding of the decision would remand be necessary.
 
 
 12
 II. Appellate Review of Temporary Authority Cases
 
 
 13
 The scope of appellate review in a temporary authority case is to ensure that the administrative action was not arbitrary or capricious, and was supported by Some evidence.[9] Appellants raise several arguments attacking the validity of this decision.
 
 
 14
 First, appellants assert that the ICC failed to require compliance with its regulations, and that this failure requires reversal. 49 C.F.R. § 1131.2(c) provides that an application for temporary authority must be accompanied by statements of support from shippers, and § 1131.2(c)(1)-(11) specifies certain information that must be included in these shipper statements.[10] Appellants contend that the statements in this case do not comply with the regulation and are legally insufficient to support the Commission's decision. The Supreme Court has held, however, that failure of the ICC to require compliance with this regulation is not grounds for reversal, American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); however, the statements must contain sufficient information to provide some kind of factual basis for the decision. See Barrett Mobile Home Trans., Inc. v. ICC, 185 U.S.App.D.C. 283, 567 F.2d 150 (1977).
 
 
 15
 We have examined the administrative record, which includes the 380 supporting shipper statements; it appears to us that, on the whole, the Commission had sufficient information on which to base a rational decision.
 
 
 16
 For example, appellants most strenuously assert that the shipper statements fail to show any "urgent and immediate need" for more service. Fifty-two shippers, however, contend, with some urgency, that they have expanded or intend to expand their marketing services in the affected geographical area, and that such expansion is dependent in large extent on an expansion in carrier service. We believe that this expressed need of a number of shippers clearly indicates the type of exigency that cannot wait while a permanent authority application is processed.[11]
 
 
 17
 Appellants' second contention is that there is insufficient evidence to support the Commission's decision. The standard for appellate review in temporary authority cases is that there must be Some evidence in the record to support the ICC. As our discussion of the factual adequacy of the shipper statements indicates, we conclude that the ICC decision was based on some evidence. The shipper statements considered as a whole present clear support for granting the authority requested in this case. Admittedly, a number of these are ambiguous or incomplete, but the very nature of a temporary authority application forecloses the compilation of an invulnerable administrative record. After our perusal of the statements and the protests, we cannot say that the Commission abused its discretion. Appellants assert, however, that their protests are compelling. They misapprehend this court's position; it is for the ICC to evaluate the weight of the evidence, we need only assure that the ultimate decision is supported by some evidence.
 
 
 18
 Finally, appellants point to the Motor Carrier Board decision, which stated:
 
 
 19
 Applicant seeks temporary authority and has shown that there is an immediate and urgent transportation need which cannot Adequately be met by existing carriers.
 
 
 20
 (emphasis added). They assert that the use of the word "adequately" in substitution for the statutory term of "capable," See n.1, Supra, indicates that the ICC improperly engaged in an inquiry into the quality of existing service. We do not agree that the use of adequately marks a deviation from the statutory inquiry. Adequacy in this context means that the existing carriers are not sufficient to satisfy the perceived need, and capability necessarily connotes some consideration of sufficiency.
 
 
 21
 Unquestionably, the present case is not an example of the administrative process at its best. And although the failure of the Commission to fully articulate its reasons for granting the authority made review more difficult, we did not perceive the difficulty to be of the severity that would require further delay for remand. More important, we believe we were able to effectively apply the proper scope of review. In conclusion, we cannot say that the Commission erred in the present case.
 
 AFFIRMED.[12]
 AINSWORTH, Circuit Judge, dissenting:
 
 22
 Though I agree with much that is contained in the majority opinion, I nevertheless dissent because of my conviction that the Interstate Commerce Commission has been guilty of abuse of discretion and arbitrary and capricious conduct, in granting the extensive temporary authority to a motor common carrier in this case.
 
 
 23
 The grant of temporary operating authority to Merchants Fast Motor Lines authorizes operations as a regular route of common carriers of general commodities between El Paso, Texas and Phoenix, Arizona (serving all intermediate points) and between Seminole, Texas and El Paso, Texas (serving no intermediate points). Additionally, Merchants is allowed to tack the authority with its existing certificates and to perform joint line service with other carriers at the termini. The routes and points authorized by the temporary authority are now being served by other protesting carriers who hold permanent authority from the Commission and perform regular daily service thereunder. Merchants, until now exclusively a Texas carrier, has been permitted by the Commission to extend its operations substantially to Phoenix, Arizona in competition with other regular route carriers over the same routes, notably East Texas Motor Freight Lines, Red Ball Motor Freight, Illinois-California Express and other carriers. These carriers' authority and operations are between the Southwest and the West Coast and specifically El Paso, Texas and Phoenix, Arizona. East Texas Motor Freight has single-line service between points in Texas and points in Utah, Arizona and California. Red Ball operates between Texas and Phoenix, Arizona. Illinois-California Express operates between Texas and Arizona, Utah, Nevada and California. (Sundance Freight Lines and O.N.C. Freight Systems, original parties to the petition for review, have now withdrawn from the case.)
 
 
 24
 It is true that the Commission has broad authority under section 210a of the Interstate Commerce Act (49 U.S.C. § 310a) to grant temporary authority ("to enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need.") However, though judicial review of a grant of temporary authority is narrow, the Commission's power is not limitless or unfettered and the Commission must comply with the Act and its own regulations. Otherwise there would be no point in permitting appeals from the Commission's decision to the circuit courts, as authorized by law.
 
 
 25
 Under 49 C.F.R. § 1131.2(c) the following is stated in pertinent part:
 
 
 26
 Each application for temporary authority must be accompanied by a supporting statement(s) designed to establish an immediate and urgent need for service which cannot be met by existing carriers.
 
 
 27
 To establish the immediate and urgent need for service there must be some evidence accompanying the application. It is apparent that this evidence consist in greatest part of the desire of Merchants and supporting shippers to eliminate joint-line service at El Paso to provide single-line service by Merchants to Phoenix. The accompanying statements of shippers indicate this is true. But according to 49 C.F.R. § 1131.4(b)(4), the Commission's Rules of Practice and Procedure, the following appears:Single-line service. Generally, the desire of a shipper for single-line service in lieu of existing interchange or connecting-carrier service will not warrant a grant of temporary authority. A grant of temporary authority to effectuate single-line service will be authorized only when it is clearly established that the carriers providing multiple-line service are not capable of, or have failed in, meeting the reasonable immediate and urgent needs of shippers or receivers between the points or territories and in respect of the commodity or commodities involved.
 
 
 28
 It also appears that though Merchants' application for temporary authority was filed on February 28, 1978, the Commission did not make its initial decision granting temporary authority until June 13, 1978, and it was not until some time later that Merchants was actually authorized to begin operations. The lapse of time itself tends to show that there was no true immediate and urgent need for additional motor carrier service.
 
 
 29
 Throughout this case the protesting carriers have not received any explanation from the Commission as to why or on what basis temporary authority was granted. In this regard the majority opinion points out:
 
 
 30
 Appellants do not assert that a reasoned opinion is necessary in every temporary authority case, but only that in a case, such as this, involving an extensive grant of temporary authority over protests from a number of carriers, the Commission should explain its results. We fail to see how imposing such a requirement in an appropriate case would place an intolerable burden on the Commission, especially in light of the competing concern that any other result would effectively vitiate appellate review. (footnotes omitted)
 
 
 31
 I have examined the record excerpts in this case and find no reasons or explanation by the Commission to justify the grant of such an extensive motor carrier authority. The Commission's initial decision served June 16, 1978 merely states: "Applicant seeks temporary authority and has shown that there is an immediate and urgent transportation need which cannot adequately be met by existing carriers." These are mere conclusory terms and do not satisfy even minimal due process. Thereafter, in its decision served July 14, 1978 which considered the petition for stay of the temporary authority filed by numerous protesting motor carriers including appellants herein, the Commission would only state the following:
 
 
 32
 Protestants' pleadings were considered by the Motor Carrier Board. Protestants were not served with the Board's decision because their protests were inadvertently and inexplicably missing from the public docket. This omission, however, is not sufficient for granting a stay.
 
 
 33
 The motor and petition are denied because good cause has not been shown to stay the approved order.
 
 
 34
 Still no reasons, no explanation by the Commission. Thereafter, in its decision served September 14, 1978 in which protesting motor carriers filed petitions seeking reconsideration of the Commission's action in granting temporary authority to Merchants, the Commission held: "The petitions are denied because they present no facts which would warrant a reversal of the Board's decision."
 
 
 35
 Under the circumstances, I believe we should hold, as the court did in Barrett Mobile Home Transport, Inc. v. I.C.C., 1977, 185 U.S.App.D.C. 283, 285, 567 F.2d 150, 152:
 
 
 36
 While we realize that the Commission must be given great leeway in dealing with applications for temporary authority, we must admonish once again that decisions unsupported by relevant data are simply arbitrary. The Commission may be able to explain how the meager evidence furnished it can establish an urgent need for additional service over the eight-state area that cannot be satisfied by certificated carriers already operating within the area; but it has not done so, and no rationale for its action is obvious.
 
 
 37
 Perhaps a new policy is emerging in the Commission, a tendency toward deregulation of motor carriers, not statutorily authorized, in which it is becoming easier to obtain operating authority without observing the standards of need heretofore required by the Commission and reviewing courts. In the meanwhile, it is appropriate to repeat the caveat well stated by Judge Wisdom for the court in Barnes Freight Line, Inc. v. I.C.C., 5 Cir., 1978, 569 F.2d 912, 923:
 
 
 38
 Courts of Appeals are not expert at evaluating the transportation requirements of the country and should defer, appropriately, to the Commission's broad discretion and expertise. We do try, however, to develop some expertise about integrity. In overseeing the administrative process, our primary goals should not be to insure "correct" decisions, but to preserve the integrity of the decision-making process. That goal demands that we reverse the Commission in this proceeding.
 
 
 39
 Even under the narrow review available to this court of the grant of temporary authority by the Commission, I would reverse the Commission's action as being unsupported by the record and in contravention of the Interstate Commerce Act and the rules and regulations of the Commission.
 
 
 
 [1]
 49 U.S.C. § 310a(a) provided:
 To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter.
 Subsequent to the ICC decision in this case, § 310a was revised and recodified at 49 U.S.C. § 10928. Since the revisions did not work any substantive changes, we will continue to refer to the text of § 310a.
 The authority sought was for general commodities operations over a fixed route between El Paso, Texas, and Phoenix, Arizona, and between El Paso and Seminole, Texas. Merchants asserted in its application that it anticipated connecting or interlining with Milne Truck Lines, Inc. at Phoenix. Milne serves California and other western states.
 
 
 [2]
 Protests were filed by O.N.C. Freight Systems, East Texas Motor Freight (ETMF), Sundance Freight Lines, Red Ball Motor Freight, Yellow Freight Systems, Herder Truck Lines, and Illinois-California Express (ICX). ETMF and Red Ball filed for review in this court. A similar petition was filed by O.N.C. in the Ninth Circuit; this petition was subsequently transferred to this court, docketed as No. 78-2744, and consolidated with No. 78-2448. Sundance Freight and ICX intervened as appellants; Merchants intervened as an appellee. Prior to this decision, O.N.C. and Sundance were voluntarily dismissed. ETMF, Red Ball, and ICX continue as appellants
 
 
 [3]
 Appellants argue that we should reject the ICC's proffered explanation, yet they present little basis for reaching such a result. Their argument, stripped to its essentials, is that the Commission should not be believed; however, they present no reason why the official assertions of this administrative agency should be viewed with such irrebuttable skepticism. Absent some extraordinary circumstances, we will assume that the ICC can be believed
 Moreover, the failure by the Motor Carrier Board to consider the protests did not prejudice the substantive rights of appellants. The ICC on reconsideration engaged in De novo Review of the application and the protests, See Bowen Transports v. United States, 116 F.Supp. 115 (E.D.Ill.1953), and this assured appellants of administrative consideration of their protests.
 
 
 [4]
 In Barnes this court reversed and remanded an ICC decision renewing a temporary authority which had been revoked previously because the applicant had tendered false evidence during a hearing on permanent authority. The court asserted that some explanation was necessary when the administrative process had been seriously tainted and the ICC had acted inexplicably
 
 
 [5]
 This general exemption has arisen from the construction of the statutory terms "in its discretion and without hearings or other proceedings." See Barnes Freight Lines, Inc. v. ICC, 569 F.2d 912 (5 Cir. 1978). In recodifying § 310a, Congress has made this exemption more precise:
 Without regard to subchapter II of chapter 103 of this title and Subchapter II of chapter 5 of title 5, the Interstate Commerce Commission may grant a motor carrier or water carrier temporary authority to provide transportation to a place or in an area having, respectively, no motor carrier or water carrier capable of meeting the immediate needs of the place or area.
 49 U.S.C. § 10928 (emphasis added).
 
 
 [6]
 At oral argument, counsel for O.N.C. asserted that the Commission action in granting the application over so many protests was unparalleled, at least in his experience. In fact, this case is not extraordinary insofar as the number of protestants is concerned. See, e. g., Bell Lines, Inc. v. United States, 306 F.Supp. 209 (S.D.W.Va.1969), Aff'd per curiam, 397 U.S. 818, 90 S.Ct. 1517, 25 L.Ed.2d 804 (1970) (forty protests filed)
 
 
 [7]
 In fact, the government concedes that a reasoned opinion would be necessary in a particular case, but argues that this is not that case. See appellee's brief at 19
 The ICC also suggests that Vermont Yankee Nuclear Power v. Natural Resource Defense Council, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), counsels against court intrusion in the internal administrative process. In Vermont Yankee, the Court reversed several D.C.Circuit decisions striking down decisions of the Nuclear Regulatory Commission because of "the perceived inadequacies of the procedures employed in the rulemaking proceedings." Id. 98 S.Ct. at 1210. The Court viewed the circuit court opinions as improper judicial interference in the administrative process.
 We do not think that Vermont Yankee prevents this court from remanding for an administrative explanation in an appropriate case. The Court did not purport to address the principle that in order to preserve effective review, a court could demand a reasoned decision from an administrative agency. Unlike Vermont Yankee, the concern in this case is not with the adequacy of administrative fact-finding but the effectiveness of judicial review. Also, the judicial intrusion in this case would be minimal; a remand would not require the ICC to reconsider the decision it has made, but only articulate some reasons.
 
 
 [8]
 The reasoning of Humboldt has been previously applied in Pitre Bros. Transfer, Inc. v. United States, 580 F.2d 140 (5 Cir. 1978)
 
 
 [9]
 The Commission's action can be supported by some evidence and still be arbitrary and capricious. See Barnes Freight Lines, Inc. v. ICC, 569 F.2d 912 (5 Cir. 1978)
 
 
 [10]
 49 C.F.R. § 1131.2(c)(1)-(11) states:
 (c) Supporting statements. Each application for temporary authority must be accompanied by a supporting statement(s) designed to establish an immediate and urgent need for service which cannot be met by existing carriers. Each such shipper's statement must contain a certification of its accuracy and must be signed by the person (or an authorized representative thereof) having such immediate and urgent need for motor carrier service. Any such supporting statement must contain at least the following information:
 (1) Description of the specific commodity or commodities to be transported (where the transportation of property is involved).
 (2) Points or areas to, from, or between which such commodities or passengers are to be transported. (If service is needed to or from a territory or area rather than a specific point or points, clearly describe such territory or area and furnish evidence of a broad need to justify the territorial grant of authority requested.)
 (3) Volume of traffic involved, frequency of movement, and how transported now and in the past.
 (4) How soon the service must be provided and the reasons for such time limit.
 (5) How long the need for such service likely will continue, and whether the persons supporting the temporary application will support a permanent service application.
 (6) Recital of the consequences if service is not made available.
 (7) The circumstances which created an immediate and urgent need for the requested service.
 (8) Whether efforts have been made to obtain the service from existing motor, rail, or water carriers, and the dates and results of such efforts.
 (9) Names and addresses of existing carriers who have either failed or refused to provide the service, and the reasons given for any such failure or refusal.
 (10) Name and address of motor carrier who will provide services and is filing application for temporary authority.
 (11) If the person supporting the application has supported any prior application for permanent or temporary authority covering all or any part of the desired service, give the carrier's name, address and motor carrier docket number, if known, and state whether such application was granted or denied and the date of such action, if known.
 The Commission has approved Form OP-MCB 95, which incorporates these requirements.
 
 
 [11]
 49 C.F.R. § 1131.4(b)(2) provides:
 Immediate and urgent need. An immediate and urgent need justifying a grant of temporary authority will be determined to exist only where it is established that there is or soon will be an immediate transportation need which reasonably cannot be met by existing carrier service. Such a showing may involve a new or relocated plant, different method of distribution, new or unusual commodities, an origin or destination not presently served by carriers, a discontinuance of existing service, failure of existing carriers to provide service, Or comparable situations which require new motor carrier service before an application for permanent authority can be filed and processed.
 (emphasis added).
 Appellants are firmly convinced that the Commission improperly granted the temporary authority solely because Merchants asserted that it was effectively being eliminated from competition because of the expansion of service into Texas by O.N.C., which had previously limited its Texas operations to interlining with Merchants at El Paso. In its application, Merchants did stress that it was placed in an intolerable position because of the prospective loss of a noncompetitive interliner.
 Appellants' argument is unavailing. First, we conclude Infra that there was some evidence to support a finding that shippers had "an immediate and urgent need" for increased service. Since there is such a basis, we need not attempt to discern what the Commission was really thinking. Second, consideration of the termination or reduction of interlining is not necessarily an inappropriate concern in this type of case. See Braswell Motor Freight, Inc. v. United States, 336 F.Supp. 709, 713 (C.D.Cal.1972); Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D.Ohio 1966).
 Appellants also denigrate the shipper statements, asserting that with sufficient effort a number of shippers could be convinced to say anything. Besides exhibiting an interesting attitude toward their customers, appellants fail to consider that the support form contains a warning that an intentional false statement could subject the declarant to criminal sanctions under 18 U.S.C. § 1001. Unless we conclude that the shippers dismiss this warning as precatory, we must assume that it serves some deterrent function. More important, the evaluation of the credibility or weight to be accorded to these statements is for the Commission, not this court.
 
 
 [12]
 On September 6, 1978, a panel of this court granted a stay pending appellate review; that stay is now dissolved